HOWARD BOOTH, HAROLD H. BOOTH and JAMES S. SMITH, Individually, jointly and severally, and as partners d/b/a Booth Funeral Home, v. WILLIAM M. KIRK.—381 S.W.(2d) 312.

Eastern Section. December 12, 1963.

Certiorari Denied by Supreme Court April 8, 1964.

Goins, Gammon, Baker & Robinson, Chattanooga, and Walter Fuller, Jr., Oak Ridge, for plaintiffs in error Howard Booth, and others.

Floyd E. Hutcherson, Rockwood, for defendant in error William M. Kirk.

COOPER, J. This action was brought by the plaintiff William M. Kirk in an effort to recover both compensatory and punitive damages for injuries received when defendants' ambulance, in which plaintiff was riding as an emergency patient-passenger, was in collision with an automobile driven by Lloyd McCluen in the intersection of Gateway Avenue and Strang Street in the City of

Rockwood, Tennessee. At the time of the accident, the ambulance was being driven by the defendant Howard Booth who, along with the other defendants, was a partner in the business operating under the name Booth Funeral Home.

In his declaration, the plaintiff averred, in substance, that he was found unconscious from carbon monoxide poisoning on the morning of January 7, 1960, and that the defendants' ambulance company was called to transport him to the hospital; that after picking him up, the defendant Howard Booth drove the ambulance at a speed of 75 to 80 miles per hour, even though he knew that the streets were covered with snow and ice, and ignored all signals controlling the movement of traffic over the streets of Rockwood, Tennessee; that when the ambulance, which was travelling South on Gateway Avenue, reached the intersection of Gateway and Strang Street, the defendant Howard Booth entered the intersection against the "red" light, without diminishing his speed, and struck the McCluen automobile head-on. Plaintiff charged that the defendants were guilty of common law negligence, and also that they violated both the state statutes and city ordinances establishing speed limits, requiring obedience to traffic signals, and defining reckless driving.

The defendants filed special pleas denying the acts of negligence alleged, and averring that the accident was proximately caused by the negligence of Lloyd McCluen in entering the intersection in front of the defendants' ambulance, which was on an emergency run. The defendants also averred that the plaintiff was guilty of contributory negligence in inhaling carbon monoxide fumes, or in becoming intoxicated, as it necessitated the emergency

trip, and, further, that the plaintiff assumed the risk of harm as he knew or should have known of the snow and ice on the road and that the ambulance would be traveling at a fast rate of speed in an effort to get him to the hospital.

Before the pleadings were read to the jury, the trial court ruled that:

"The facts involved in this accident, and the question of direct and proximate cause of the accident between the defendants' ambulance and Mr. McCluen's automobile have already been adjudicated in the suit brought in this Court by Mr. McCluen against these same defendants. * * * and is the law of this case in so far as the collision and the causation of it, and the liability of the defendants for the consequence of it is concerned."

The trial court was further of the opinion that the defense of contributory negligence and assumption of risk as plead by the defendant was untenable as a matter of law, and limited the introduction of evidence to the nature and extent of plaintiff's injuries and expenses incurred in the treatment of those injuries.

Later, in instructing the jury on the issue of damages, the trial court stated, among other things, that:

"Now, gentlemen of the jury, with reference to this matter of punitive damages, the Court instructs you that in the trial of the lawsuit brought by Lloyd McCluen against these defendants, which, as I explained to you this morning, is a complete adjudication of all the facts, the jury awarded the plaintiff punitive damages and that, of course, means that the jury in that case found the defendants guilty of such gross and

wanton and reckless misconduct as to justify an award of punitive damages, and those facts have been settled and determined. And the Court instructs you, therefore, that if you find that this plaintiff suffered injuries in and as a result of the accident, he would be entitled not only to such compensatory damages as the jury deems would be right and proper compensation under the proof and under the law as given you for measuring this, but he would also be entitled to a separate sum of money as punitive damages.''

The jury returned verdicts of $1,000.00 as compensatory damages and $1500.00 as punitive damages, which were approved by the trial court. After their motion for a new trial was overruled, the defendants appealed insisting, primarily, that the trial court erred in holding that the defendants were judicially estopped from contesting the issues of negligence, proximate cause, and the award of punitive damages, by reason of the judgment returned against them in a prior suit arising out of the same accident.

■ The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of *res judicata,* and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment. Cline v. Cline, 37 Tenn.App. 696, 270 S.W.(2d) 499, 502; Thomas v. Fertick, 200 F.Supp. 851 (E.D.Tenn.S.D.); Mazzilli v. Accident & Casualty Ins. Co., etc., 26 N.J. 307, 139 A.(2d) 741; Anno. 88 A.L.R. 574; 30A Am. Jur., Judgments, Sec. 373. p 418; Restatement of Judgments,

Sec. 93; Scott, Collateral Estoppel by Judgment, 56 Harvard Law Review 1.

In situations involving multiple claims growing out of the same accident, the courts, with but few exceptions, have held that the doctrine of collateral or judicial estoppel has no application. As stated in 23 A.L.R.(2d) 717:

"Most courts of last resort which have considered the question have continued to hold, in conformity with the rule announced in the earlier annotation, that a judgment for the plaintiff in an action growing out of an accident was not res judicata, or conclusive, as to issues of negligence or contributory negligence, in a subsequent action growing out of the same accident, by a different plaintiff against the same defendant." See also 133 A.L.R. 185.

In Suggs v. Alabama Power Co., 271 Ala. 168, 123 So.(2d) 4, the Court held that the doctrine was not applicable where multiple claims arose out of the same accident and stated the general rule, as follows:

"As we see it, the controlling principle is that a judgment in a suit by one of several persons injured by the same tort-feasor will not operate as an estoppel in favor of or against the other injured persons in their separate causes of action against the tort-feasor. 'It is a general rule that an adjudication takes effect only between those who are parties or privies to the judgment, and that it gives no rights to or against third parties.' Freeman on Judgments, 5th Ed. sec. 407, p. 887." See also Restatement on Judgments, Sec. 93 and comment on pages 464-466, 50 C.J.S., Judgments sec. 765, p. 293 et seq; 30A Am.Jur., Judgments, Sec. 371 page 411-416.

\* \* \* \* \* \*

"In other words, even though the identical issue as to negligence vel non of the tort-feasor has already been resolved in another case, the other injured persons and the tort-feasor are not estopped to plead negligence or the absence of negligence, as the case may be, in the trial of the subsequent suits. To be effectual there must be mutuality of estoppels. To hold that the tort-feasor cannot interpose an estoppel in the later cases, after being found not guilty of negligence in the first case, but would be bound in the later cases by a finding of his negligence in the first case would, on its face, be unfair and unjust, and do violence to the principle requiring mutuality of estoppels."

Plaintiff urges in argument and in brief that the Courts of this state are now committed to the rule that it is not necessary that the parties be the same, or be in privity, or that there be mutuality of estoppels, in order to render a verdict in one action evidence in another; that it is sufficient if the party against whom the verdict is intended to be introduced was a party to the former suit, and that the same subject matter was directly put in issue by the pleadings, citing Cantrell v. Burnett & Henderson Co., 187 Tenn. 552, 216 S.W.(2d) 307. Admittedly, the opinion in the Cantrell case contains language which appears to support the insistence of the plaintiff. However, an analysis of the opinion dispels the idea that the Courts of this State have discarded the general rule above stated.

In the Cantrell case, the plaintiff purchased a new Hudson automobile from Burnett & Henderson Company. The automobile was destroyed by fire 3 or 4 days later. It was Cantrell's insistence that the proximate cause of

the fire was a defect in the wiring or other similar construction of the automobile, and he brought suit against both the dealer and the manufacturer, Hudson Sales Corporation. The trial judge, at the close of the proof, directed a verdict for the manufacturer, but permitted the case to go to the jury as to the dealer. The jury determined that the automobile was not defective at the time of its sale, and returned a verdict for the defendant dealer. On appeal, the Court, in an opinion by Mr. Justice Tomlinson, found that there was privity between the manufacturer and the dealer and, therefore, the judgment operated as res adjudicata.

In doing so, the Court quoted with approval from 30A Am.Jur., Judgments, Sec. 371, p. 411, as follows:

" 'It is a fundamental principle of jurisprudence that material facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action *between the same parties or their privies,* regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form or proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.' " (emphasis added).

The Court went on to say:

"It will be noted that in the quotation just made there is contained the expression 'in a subsequent action between the same parties *or their privies.*' (Emphasis added). In discussing the meaning of the word 'privy' in connection with the doctrine of res judicata on facts previously determined judicially, it is stated in [30A American Jurisprudence, page 451] that:

" 'It has been declared that privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation.'

\* \* \* \* \* \*

"In the instant case \* \* \* [t]heir relation is that of vendor and vendee, wherein both are sought to be held liable because of their 'relation to the subject matter of the litigation,' the automobile sold to Cantrell.

"However, we can perceive no distinction in principle on the question of liability here from that when the relation is that of master and servant wherein the master in a separate action is sought to be held liable solely because of an alleged tort done by the servant, and in which it has been finally adjudged that the servant committed no tort. In that case the master could not, as a matter of law, be liable for the alleged negligence of his servant, when it had been judicially determined that the servant was not negligent. So, in the present case, the manufacturer, as a matter of law, could not be liable for an alleged fire causing defect in an automobile at the time it was sold to a dealer when it had been judicially determined that the fire which destroyed the car was not caused by any alleged defect existing in that car when the dealer subsequently sold it to the one who claims damages from the manufacturer.''

In commenting on the Cantrell case in Shuey v. Frierson, 197 Tenn. 235, 270 S.W.(2d) 883, the Court stated:

"We recognize the rule in respondeat superior cases as is so clearly laid down in Loveman v. Bayless, supra [128 Tenn. 307, 160 S.W. 841, Ann.Cas. 1915C, 187], and in Cantrell v. Burnett & Henderson, supra. By what we have said last above we do not intend to in any way weaken that well-recognized rule of law." See also 50 C.J.S. Judgments sec. 757, p. 277.

The case of Whitley v. Reeves, 39 Tenn.App. 169, 281 S.W.(2d) 411, also cites the Cantrell case as authority for holding:

"The principal of *res judicata* is of universal application. It is that a matter once litigated and determined in a court of competent jurisdiction shall not again be drawn in question between the same parties or their privies. [Citing cases.]

"Otherwise stated, "if a judgment necessarily determines a particular fact, that determination is conclusive, and requires the same fact to be determined in the same way in all subsequent actions between the same parties'. Memphis City Bank v. Smith, 110 Tenn. 337, 362, 75 S.W. 1065, 1071. Beare v. Burnett, 162 Tenn. 610, 613, 39 S.W.(2d) 737."

 In the light of the above authorities, we are of the opinion that the trial court erred in holding that, under the doctrine of collateral estoppel, the defendant was precluded from contesting the issues of negligence, proximate cause and the award of punitive damages, by virtue of the judgment rendered against him in a prior case arising out of the same accident.

■ Plaintiff has filed numerous assignments of error directed to the pleadings, or lack thereof, the limitation of proof to the issue of damages, the exclusion of evidence describing the manner in which the accident occurred and the alleged intoxicated condition of the plaintiff, the court's charge on punitive damages and the absence of evidence on which the jury could base an award of punitive damages. We do not think it is necessary to discuss these assignments in view of our holding that the doctrine of collateral estoppel is not applicable in this case, except to point out that, in our opinion, a trial court always would be in error to limit proof to the nature and extent of plaintiff's personal injuries and damages where the plaintiff seeks an award of punitive damages and has plead facts justifying such an award.

■■ It is well-settled in this state that a jury, in its discretion, may award punitive or exemplary damages in addition to compensatory damages in tort cases where the defendant has acted fraudulently, maliciously, oppressively, or with gross negligence. McDonald v. Stone, 45 Tenn.App. 172, 321 S.W.(2d) 845; Bland v. Smith, 197 Tenn. 683, 277 S.W.(2d) 377, 49 A.L.R.(2d) 1212. In such cases, the award is made to punish the the defendant and to deter others from doing the same, or similar, act. Suzore v. Rutherford, 35 Tenn.App. 678, 251 S.W.(2d) 129.

■ How can a jury determine whether a defendant should be punished, or to what extent, without evidence of the defendant's offense and the manner in which it was committed? The answer is self-evident. It cannot. In order for a jury to exercise its discretion in determining if an award of punitive damages should be made and, if so, the amount of the award, the jury must be apprized

"of all circumstances attendant upon the incident giving rise to the suit," such as:

"the nature of the case at bar, the nature or character of the act, the malice or wantonness of the act, the motive for the act, the manner in which it was committed, the injury intended or likely to result from a disregard of duty, the character and extent of the injury, and, according to some cases, the character of the parties, at least the character of the defendant. In short, as a general rule, material matters to be considered in determining the amount are what will be a proper punishment for the offending person, and the deterrent effect of the award on others." 25 C.J.S. Damages sec. 126, page 739, quoted with approval and adopted in Suzore v. Rutherford, 35 Tenn.App. 678, 251 S.W.(2d) 129; see also McDonald v. Stone, 45 Tenn.App. 172, 321 S.W.(2d) 845.

For the above reasons, the judgment of the trial court is reversed and the cause is remanded for a new trial. Costs incident to the appeal are adjudged against the plaintiff William M. Kirk.

McAmis, P. J., and Milligan, Special Judge, concur.