PHILIP P. RUPERT, JR., et al., Respondents, v CHARLES J. SELLERS, JR., et al., Appellants.

Fourth Department, June 6, 1975

*Jaeckle, Fleischmann & Mugel (Edward J. Murty, Jr.,* of counsel), for appellants.

*Harris, Beach & Wilcox (Edward H. Fox* of counsel), for respondents.

WITMER, J. Defendants appeal from an order denying their motions for protective orders against plaintiffs' notices (1) to examine before trial three nonparty witnesses and (2) for production and discovery (a) of defendants' income tax returns for the years 1969–1973 and correspondence between defendants and said three nonparty witnesses, plus other documents and (b) of "all record cards in the possession of defendants for every policy holder who is or at any time on or after June 8, 1970 has been a member of the Monroe County Medical Society regarding insurance policies issued by Commercial Insurance Company for which defendants or either of them serve or at any time served as agents"; and granting plaintiffs' cross motion under CPLR 3104 that the disclosure proceeding be supervised by a Justice of the Supreme Court. The action is to recover damages for libel, slander, unfair insurance practices and wrongful interference with contract.

In reliance on *Cirale v 80 Pine St. Corp.* (35 NY2d 113) defendants contend that Special Term erred in permitting plaintiffs to examine before trial the three nonparty witnesses who were officers of the Monroe County Medical Society at the time that defendants replaced plaintiffs as administrator of group insurance for members of the society. Those witnesses

are Donald M. Irish, executive secretary, Dr. Robert C. Webster, former president, and Dr. John G. Hamilton, former chairman of the economics committee of the society. Since this appeal was instituted, Mr. Irish has died, and so we are now concerned only with the examination of Doctors Webster and Hamilton.

Defendants assert that plaintiffs are not entitled to examine these witnesses because they have not shown that special circumstances exist to justify it. Plaintiffs contend, however, that these witnesses are the ones who primarily made the recommendation and secured the society's decision to terminate plaintiffs as administrator of its group insurance plan and substitute defendants therefor, and that they were the principal persons to whom defendants addressed their alleged libelous and slanderous statements concerning plaintiffs, which induced them to act. At Special Term these witnesses opposed the notice to examine them, but they have not appealed from the order herein. Special Term concluded that the allegation that these witnesses took a leading part in terminating plaintiffs' connection with the society is a showing of special circumstances from which it is reasonable to assume that they will be unfriendly to plaintiffs' action herein, and thus justifies their examination before trial. Although on an application to examine nonparty witnesses plaintiffs might be well advised to show that they had unsuccessfully endeavored to interview them, we hold that Special Term was justified in its determination in the circumstances of this case (see *Cirale v 80 Pine St. Corp., supra; Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406; *Braswell v Birch Props.,* 42 AD2d 1028; *Kenford Co. v County of Erie,* 41 AD2d 586; *Sobel v Bess,* 39 AD2d 778; *Polisar v Linz,* 39 AD2d 544; *Southbridge Finishing Co. v Golding,* 2 AD2d 430).

With respect to the record cards maintained by defendants concerning the members of the medical society who are insured in the group plan, it appears that the information thereon may be material on the issue of whether defendants spoke and wrote the truth in their representations to the society that they could provide better coverage at better rates, which led to plaintiffs' removal and defendants' substitution for them as administrator of the plan. The cards may also be relevant on the issue of plaintiffs' compensatory damages.

Defendants contend that such cards are confidential business records and that inspection of them by plaintiffs might

grant plaintiffs unfair and improper competitive advantages, and that such cards are privileged. In view of the relevancy of the cards upon the issues in this action, plaintiffs are entitled to inspect them. Such right of inspection, however, must be considered in light of defendants' property interest in the cards, which defendants are entitled to protect. The order authorizing such inspection should be modified, therefore, to add a provision enjoining plaintiffs from soliciting or servicing, in competition with defendants, any member of the society whose card is inspected by plaintiffs in this discovery proceeding (see *Ritter Ski Shop v Gustafsson,* 20 AD2d 637).

We turn now to consideration of plaintiffs' right to inspect defendants' income tax returns for the years 1969–1973 as bearing on both compensatory and punitive damages.

With respect to compensatory damages plaintiffs contend that such tax returns will be material on the issue of the amount of income that defendants have obtained through their administration of the group fund. We fail to see how such returns will be helpful in plaintiffs' proof in this regard. Defendants are engaged in a broad insurance business in western New York. Although its profit or loss from the business which it has received from Monroe County Medical Society is undoubtedly reflected in its income tax returns, it is most unlikely that it would be specifically shown therein, so as to aid the court in determining defendants' financial gain in administering the group fund. Regardless of whether other records of defendants may be examined by plaintiffs to ascertain such financial gain, we hold that examination of defendants' income tax returns would be too general a discovery, and would not be justified on the issue of compensatory damages.

The issue of punitive or exemplary damages, however, is another matter. Because the law in New York on the question of the proof of defendant's wealth in an action for such damages has not been declared by statute or the Court of Appeals, the matter merits consideration in some depth.

It is clear that with respect to compensatory damages the wealth of either party has no bearing in law, and hence it is not discoverable. In *Laidlaw v Sage* (158 NY 73, 103) the court expressed the philosophy for such rule as follows: "It has ever been the theory of our government and a cardinal principle of our jurisprudence that the rich and poor stand alike in courts of justice, and that neither the wealth of the one nor the poverty of the other shall be permitted to affect the adminis-

tration of the law. Evidence of the wealth of a party is never admissible, directly or otherwise, unless in those exceptional cases where position or wealth is necessarily involved in determining the damages sustained."

The general rule with respect to compensatory damages is followed in cases wherein, for example, plaintiff seeks discovery of defendant's insurance policy *(Simpson v Foundation Co.,* 201 NY 479, 490; *Mosca v Pensky,* 42 AD2d 708). However, defendant's wealth was deemed a proper subject of inquiry in an action for compensatory damages wherein plaintiff sought recovery for fraudulent inducement of marriage *(Huff v Vose,* 245 App Div 83); and the existence of insurance may be sought on the issue of compensatory damages in an appropriate case *(Oltarsh v Aetna Ins. Co.,* 15 NY2d 111, 118).

For centuries the courts have awarded punitive or exemplary damages in cases where the defendant with malice has injured the plaintiff (Note: Exemplary Damages in the Law of Torts, 70 Harv. L. Rev. 517, 518). A very few States do not permit punitive damages at all (see 25 C.J.S., Damages, § 126(3), n 10; e.g., *Texas Public Utilities Corp. v Edwards,* 99 SW2d 420 [Texas]), and at one time our Court of Appeals expressed its disapproval of them *(Dain v Wycoff,* 7 NY 191). But the principle has survived and even flourished, to the extent that in *Walker v Sheldon* (10 NY2d 401) its application was extended to actions in fraud and deceit. In *Walker* the court stressed that exemplary damages are awarded to punish the defendant and to deter malicious acts which harm others, and it stated (p 405) that the amount of punitive damages is in the hands of the jury (citing *Kujek v Goldman,* 150 NY 176, 180), but added that the award is subject to judicial review. The courts have exercised such power (see *Faulk v Aware, Inc.,* 19 AD2d 464, affd 14 NY2d 899). The *Walker* court said nothing, however, about the nature of the evidence (apart from the extent of defendant's malicious acts) which could be presented to the jury to guide it in fixing the amount of the award.

In *I.H.P. Corp. v 210 Central Park South Corp.* (16 AD2d 461, 467, affd 12 NY2d 329) Justice BREITEL, as he then was, wrote, "There is no rigid formula by which the amount of punitive damages is fixed, although they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it", citing 14 NY Jur, Damages, § 188. In 1 NY PJI 625 this statement is substantially adopted. Defend-

ant's wealth, it should be noted, is only relevant with respect to what should be awarded to plaintiff as punishment to defendant and to deter defendant and others of similar mind from engaging in malicious acts.

The question of whether plaintiff could prove the amount of defendant's wealth as a guide to the jury with respect to the amount of the verdict was answered in the affirmative by way of dictum in *Fry v Bennett* (1 Abb Prac 289 [1855]), where the court *held* only that the extent of the defendant newspaper's circulation was properly received in evidence on the question of the amount of harm done to the plaintiff, that is, with respect to compensatory damages. Following that case *Palmer v Haskins* (28 Barb. 90 [1858]), *Austin v Bacon* (49 Hun 386 [1888]), *Enos v Enos* (58 Hun 45 [1890]) and *Brown v Smallwood* (86 App Div 76, 82 [1903]) held that the defendant's wealth was not admissible on the issue of the amount of punitive damages. There appears to have been no other New York adjudication on the subject until *Goines v Pennsylvania R.R. Co.* (208 Misc 103, 114 [1955]) wherein the court stated that, "the jury had a right to consider the financial responsibility of the Pennsylvania Railroad and the two special officers, the defendants in this case (see 1 Clark on New York Law of Damages, § 54, and cases therein cited). It requires the citation of no authority to establish that the jury was justified in believing that the Pennsylvania Railroad Company's financial ability to pay $7,500 is comparable to the individual defendants' financial ability to pay $1." The Appellate Division reversed (3 AD2d 307) on the ground that the jury could not differentiate between the defendants because of their financial standing. Thereafter, in *Klauber v S.K.E. Operating Co.* (163 Misc 418) it was held, solely in reliance on Clark on Damages, cited *supra,* that a defendant's wealth is material on the issue of punitive damages. Three years later in 1940 the same court, per KIMBALL, J., later a member of this court, carefully reviewed the history of the cases on this subject in New York *(Wilson v Onondaga Radio Broadcasting Corp.,* 175 Misc 389) and held that such evidence is not admissible (see Note, 21 St. John's L. Rev. 198; 1 NY PJI 2:278, p 626).

No other New York court ruling on this subject occurred until *Selwyn v Korein* (N.Y.L.J., Dec. 12, 1969, p 18, col 7, BUSCHMANN, J., Queens County Sup. Ct.) held that the evidence of defendant's wealth is material in an action for punitive damages and granted a discovery order for that

purpose. The only rulings on the subject since then are the one involved on this appeal and the one in *Vollertsen Assoc. v Nothnagle, Inc.* reversed herewith (48 AD2d 1007).

In view of every citizen's right to privacy and the general desire of people not to divulge their wealth, on the one hand, and on the other hand, the ease with which a plausible claim for punitive damage may be made in many actions (including actions for double and treble damages authorized by various statutes), it is readily seen that a rule permitting unlimited examination before trial of a defendant as to his wealth in a punitive damage action could have unfortunate results. It could constitute undue pressure on defendants in such actions to compromise unwarranted claims. Nonetheless, an examination of the authorities in general across the nation reveals that the great majority of the States permit disclosure of a defendant's wealth in such actions and admit such evidence upon the trial *(Coy v Superior Ct. of Contra Costa County,* 58 Cal 2d 210, 221–224 [1962]); *Schmitt v Kurrus,* 234 Ill 578, 581–582 [1908]; *Chapin v Tampoorlos,* 325 Ill App 219 [1945]; *Judson v Tracey,* 25 Pa D & C 2d 97 [1961]; *Kirven v Kirven,* 162 SC 162 [1931]; *Hageman v Vanderdoes,* 15 Ariz 312, 317–319 [1914]; *Cabakov v Thatcher,* 37 NJ Super 249; 25 C.J.S., Damages, § 126(3); Ann 27 ALR3d 1375; Restatement, Torts 2d, Tentative Draft No. 19 [1973], § 908, Comment e; 70 Harv. L. Rev. 517, 528). Motions to discover defendant's assets before trial have been granted *(Lewis v Moody,* 195 So 2d 260 [Fla, 1967]), including defendant's income tax returns, as to which the claim of privilege has been denied *(Thoresen v Superior Ct. of Maricopa County* , 11 Ariz App 62 [1969]; *Gierman v Toman,* 77 NJ Super 18 [1962]).

In *Gierman (supra,* pp 24–25) the court stated the reason why evidence of a defendant's wealth is material and discoverable, and at the same time expressed the reasons why the discovery should be limited, as follows: "The wealth of a defendant becomes material, since what would amount to punishment visited upon a poor man would be a mere trifle to a man of wealth. This does not, however, justify a roving inquiry into details. It is unthinkable that a court should sanction such broad and unlimited search and report of a defendant's personal holdings on the mere basis of demand for punitive damages. * * * A jury could assess punitive damages adequately without having all details of a defendant's assets and liabilities. The concept of the right of privacy in our

society rises higher than the needs of this plaintiff. The discretionary power of the court under the rules requires a balancing of the need of a plaintiff against the 'annoyance, embarrassment or oppression' of a defendant. The plaintiff's right should be equated with the defendant's harassment."

It was also ruled in *Gierman (supra)* that evidence of defendant's wealth could not be brought out upon the trial unless and until the jury has brought in a special verdict that plaintiff is entitled to punitive damages against defendant. This approach has been recommended in a note in St. John's Law Review (vol 21, pp 198, 201–202). We adopt this procedural principle.

It should also be observed that the matter of a defendant's wealth has at least two aspects, and a corollary of our ruling is that defendant, if so advised, should be permitted to show his poverty or lack of wealth in diminution of damages (see 25 C.J.S., Damages, § 127, pp 1171–1172).

Defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice, thus entitling plaintiff to punitive damages. To avoid such possible abuse, we conclude that the split trial procedure should be used, and that the court should take a special verdict as to whether defendant was guilty of such conduct that plaintiff is entitled to punitive damages. Not until plaintiff obtains such a special verdict that he is entitled to punitive damages is it necessary or important for him to know defendant's wealth.

Since the purpose of presenting to the jury the amount of defendant's wealth is only to furnish to them a guide for suitable punishment, there is no need for a plaintiff to explore the details of a defendant's assets and liabilities. A mere statement of defendant's respective total net worth is sufficient. In the event that plaintiffs in this case obtain such special verdict they shall then be entitled to have each defendant submit, orally or in writing, a sworn statement of his net worth, and in connection therewith may examine copies of each defendant's income tax returns for not to exceed five years immediately preceding. Although such returns may not reflect accurately defendants' net worth, they will at least show defendants' earnings during such period and will have a direct bearing on their financial strength regardless of what disposition they may have been making of their capital assets. Such information will be germane to the question which the

jury must answer, among other things, as to the amount of verdict which should be awarded to plaintiffs as appropriate punishment of defendants for their misconduct.

We recognize that in some respects this procedure may delay the final disposition of a case. But such delay will be compensated (1) by the protection of defendants from harassment by discovery of their net worth in cases where plaintiffs have only alleged, but have not established, a cause of action for punitive damages and (2) by the time saved in barring such discovery in cases where plaintiff cannot prove that he is entitled to punitive damages. Moreover, the limited discovery to which a plaintiff is entitled as to defendant's wealth in a punitive damage case should be conducted expeditiously, and in most cases it should be completed and the necessary evidence be available for presentation to the same jury which rendered the special verdict.

Special Term's order, therefore, denying defendants' motion to vacate plaintiffs' notice for the production and discovery of defendants' income tax returns should be reversed and the motion granted, without prejudice to renewal of the application for discovery upon the trial when and if plaintiffs obtain a special verdict that they are entitled to punitive damages.

We find no merit in defendants' appeal from the discretionary order of Special Term for supervision of the disclosure proceedings by a Justice of the Supreme Court under CPLR 3104.

The order should, therefore, be modified in accordance with this opinion and, as modified, affirmed.

MARSH, P. J., MOULE, CARDAMONE and GOLDMAN, JJ., concur.

Order unanimously modified in accordance with opinion by WITMER, J., and as modified affirmed, without costs.