[Civ. No. 57323. Second Dist., Div. One. Dec. 10, 1979.]

W. GUY COBB et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SAMIR B. TLEEL et al., Real Parties in Interest.

544

Counsel

Berndt Lohr-Schmidt for Petitioners.

No appearance for Respondent.

Cadoo, Tretheway, McGinn & Morgan and Robert J. Reamer for Real Parties in Interest.

Opinion

KAUFMANN, J.*—This petition for writ of mandate seeks to set aside discovery orders made by the court below directing petitioner Cobb to answer certain questions asked at his deposition relating to his financial affairs, and directing petitioner Dover Equities, Inc., to respond to interrogatories seeking its net worth for the years 1976, 1977 and 1978.[1] Each order contained protective provisions limiting the information to be provided for the use of plaintiff's counsel and plaintiff and only for purposes of the litigation. The justification for seeking the financial information was based upon allegations of fraud and malice in the complaint and a prayer for punitive damages. In the court below and in this petition petitioners justify their refusal to answer on the ground that their constitutional right of privacy is being violated by the discovery orders and that they are entitled as a matter of right to a bifurcation of the issue of punitive damages, both as to trial and discovery, from the underlying cause of action. More specifically, they argue that the plaintiff is not entitled to engage in discovery of their financial circumstances by reason of the issue of punitive damages until the plaintiff has first obtained a judgment on the underlying cause of action and a special verdict that he is entitled to punitive damages. Only then does the financial information become relevant. Pending the disposition of this petition the corporation has filed its answers to the interrogatories in order to avoid sanctions imposed by the lower court. This fact does not render the petition moot as to the corporation because of the breadth of the order. In addition, it was stipulated that the same questions asked of Cobb could be considered to have been asked of the corporation and answers would have been refused on the same grounds.

---

*Assigned by the Chairperson of the Judicial Council.

[1] Initially a petition for writ of mandate was denied by this court. A petition for hearing was granted by the Supreme Court and the matter transferred back to this court with directions to issue its alternative writ, citing *Rupert v. Sellers*, 48 App.Div.2d 265 [368 N.Y.S.2d 904] and *Gierman v. Toman*, 77 N.J.Super. 18 [185 A.2d 241].

The complaint was filed on January 24, 1978. It contained three causes of action, the first for fraud arising out of a land transaction, and two additional causes of action for money had and received. Punitive damages in the sum of $100,000 were requested in connection with the cause of action for fraud. Petitioner Cobb was sued as one defendant; petitioner Dover Equities, Inc., was sued as a corporate defendant. Alter ego allegations were also included. A joint answer was filed on October 6, 1978. An at issue memorandum was filed on March 20, 1979. The discovery consisted of the serving of interrogatories on the corporation and the subsequent taking of Cobb's deposition on May 24, 1979. Insofar as it is pertinent here, the corporation refused to answer the interrogatories seeking its net worth for the years 1976, 1977 and 1978. An order was made to compel answers. Subsequently, Cobb's deposition was taken and he refused to answer questions about his net worth and financial affairs on grounds of irrelevancy and invasion of privacy under article I, section 1 of the California Constitution.[2] The stipulation concerning the corporation was made at Cobb's deposition.[3]

A motion to compel answers was made by the plaintiff. Objections were filed by the defendants with the primary emphasis on a request for bifurcation of discovery and trial with respect to punitive damages. The trial court granted plaintiff's motion and ordered Cobb to answer related to his net worth; a protective provision was added that plaintiff's counsel and the parties are to use such information only for the purpose of the litigation. A motion to bifurcate issues to discovery and trial made by Cobb and the corporation was denied. A subsequent motion for sanctions against the corporation was granted for failing to respond to the order requiring it to disclose its net worth, and it was given an additional 30 days in which to comply upon penalty of having its answer stricken for failing to do so. It is these orders against which the petition is directed.

[2]The questions asked concerned the buying and selling of property within the last two years in which any third party was involved, the individual net worth, current tangible assets, current intangible assets, cash in bank, present ownership of stock in any corporation, current individual liabilities, present individual fixed assets, outstanding accounts receivable.

[3]Under the circumstances of this petition we do not deem it necessary to determine whether a corporation is legally entitled to rely upon the right to privacy declared in article I, section 1. The trial court's power under Code of Civil Procedure section 2019, subdivision (b)(1) to protect a party from annoyance, embarrassment or oppression is sufficient basis under the circumstances of this case for the framing of an appropriate order. We refer to the allegations of alter ego and to the fact that it was stipulated for convenience that the same questions asked of the natural defendant were asked of the corporation and the refusal to answer on the part of the corporation was on the same grounds.

In the first instance we conclude that the trial court correctly disposed of the motion to bifurcate based upon the holding of the Supreme Court in *Coy* v. *Superior Court,* 58 Cal.2d 210 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 679]. In *Coy* the Supreme Court held that in an action for punitive damages, evidence of a defendant's financial condition is admissible at trial for determining the amount that it is proper to award. It further held that his financial condition is relevant to the issue and is properly discoverable, and it concluded that the trial court in that case "erred seriously in holding that plaintiff must wait until after he obtains a judgment in order to obtain such information." This approach followed the policy analysis and spirit of the discovery statutes in *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266]. Ordering bifurcation of discovery regarding financial condition until a special verdict on the right to punitive damages has been obtained flies squarely in the face of the holding in the *Coy* case, for the essence of bifurcation is to await favorable outcome for the plaintiff on the underlying cause of action, a prerequisite for punitive damages.

Petitioners rely upon a holding in New York ordering bifurcation of discovery and trial where punitive damages are involved as a means of insuring protection from disclosure of a defendant's financial affairs. In *Rupert* v. *Sellers,* 48 App.Div.2d 265 [368 N.Y.S.2d 904], a decision of the appellate department of the New York Supreme Court, the court did hold that to avoid abuse, a split trial procedure should be used, and that the court should take a special verdict as to whether defendant was guilty of such conduct that plaintiff is entitled to punitive damages. It concluded that not until plaintiff obtains such a special verdict is it necessary or important for him to know defendant's wealth. It recognized that such a procedure might cause delay, but justified it on the ground that it was necessary to protect defendants from harassment by discovery of their net worth and by the time saved in those cases where the finding is negative on the issue. Moreover, it indicated that the limited discovery permitted in such a case should be conducted expeditiously, and in most cases it should be completed and the necessary evidence be available for presentation to the same jury which rendered the special verdict.

It is interesting that the New York court was aware of the existence of the *Coy* case and its holding because it cited it. It also appears that the New York court relied upon *Gierman* v. *Toman,* 77 N.J.Super.18 [185 A.2d 241], Law Division New Jersey Superior Court, as precedent

for its own ruling. However, we do not read the New Jersey decision as requiring a special jury verdict on punitive damages before permitting discovery. Rather, what the New Jersey court concluded was that a prima facie showing had to be made of the right to recover punitive damages before a general disclosure of a defendant's wealth can be compelled. As will be pointed out, as long as law and discovery judges properly exercise their discretion in fashioning appropriate protective orders, there is no necessity to resort to the New York procedure even if *Coy* did not preclude its use. Because of the heavy emphasis placed upon the bifurcation issue, the trial court directed his attention solely to that primary argument advanced by the petitioners, and he fashioned a limited protective order which he believed was consistent with the holding in *Richards* v. *Superior Court*, 86 Cal.App.3d 265 [150 Cal.Rptr. 77], and thus complied with his obligation to afford protection to the petitioners' rights. He considered no alternatives to the immediate furnishing of the information. It is clear that he failed to consider the full import of the *Richards* decision. With so much emphasis on the bifurcation issue, it is easy to see how this came about. Nevertheless, the issues of protection in resisting discovery raised by the petitioners were broader than their motion to bifurcate.

It is true that in the *Richards* case, the protective order was a limited one, requiring only that the requested financial information be made available to the plaintiff's counsel or his representative, and then only for purposes of the lawsuit. But this was so because that was the only order before the court for consideration. There is nothing in the decision to suggest that this is the only mechanism available to the parties and the court to achieve a proper objective where objection to discovery of financial affairs is raised in a case involving punitive damages. *Richards* pointed out the necessity to balance the right of a defendant to be protected from harassment and to have his right to privacy protected against intrusion into his financial affairs against the right to legitimate discovery when punitive damages are properly a part of a plaintiff's case. *Richards* set forth the following principles to guide the lower courts: (1) it declared the necessity for addressing protective orders upon request where financial information is sought in connection with a claim for punitive damages; (2) consistent with *Coy*, it rejected any position that the protection is absolute absent a *substantial* showing that the party seeking the information will in fact recover punitive damages; (3) it declared that the right of privacy in article I, section 1 is not violated by disclosure to counsel for the parties for the purpose of the lawsuit of financial information because disclosure in civil discovery re-

lating to punitive damages is relevant to the public purpose served by judicial dispute resolution; and (4) it declared that so long as the disclosure is by a *properly fashioned protective order*, the invasion into privacy is held within the limits required by Supreme Court cases dealing with that right, citing *City of Carmel-by-the-Sea* v. *Young*, 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313] and *Valley Bank of Nevada* v. *Superior Court*, 15 Cal.3d 652 [125 Cal.Rptr. 1, 553, 542 P.2d 977]. To this we could add *Britt* v. *Superior Court*, 20 Cal.3d 844 [143 Cal.Rtpr. 695, 574 P.2d 766], where the Supreme Court again considered First Amendment rights in the context of discovery. It is to be noted that the court in *Britt* did not consider that it was breaking new constitutional ground and that it did not prevent or delay discovery, but only held that the discovery ordered in that case was unnecessarily broad in the light of the constitutional considerations which had to be addressed.

█ Except to the extent that it limited disclosure of the information sought, the trial court here made no effort to fashion a protective order within constitutional limits. No inquiry was made into the many factors which should be considered in resolving the issue. █ First and foremost, in order to forestall the possibility of use for an ulterior purpose, is to question the timing. It would seldom seem necessary to the integrity of discovery proceedings that extensive discovery be permitted over objection into financial affairs of a defendant ahead of discovery on the merits of the underlying cause of action. In this connection the trial court should consider the advisability of requiring a prima facie showing into the right to punitive damages as indicated in the *Gierman* case.[4] We do not hold that such a showing is required in each instance where punitive damages are sought, but the trial judge should have this alternative available where suitable to the circumstances. Such a procedure is not foreclosed by any judicial decision of this state. *Coy* did not address this problem. Even though the plaintiff may not be compelled to prove his case for punitive damages by a preponderance of the evidence prior to financial discovery, this does not preclude a requirement that he lay a foundation as to his case before proceeding into such discovery. *Richards* likewise does not preclude this

---

[4]The Legislature has recognized the validity of this approach with respect to trials by adding section 3295 to the Civil Code. This new section authorizes a court, for good cause, to issue a protective order at the request of a defendant requiring a plaintiff seeking punitive damages to produce evidence of a prima facie case for damages under Civil Code section 3294 prior to the introduction of evidence of the financial condition of the defendant. (Stats. 1979, ch. 778.)

approach, since it only declared that a *substantial* showing was not required. In the delicate task of balancing the rights involved, the court should not be foreclosed from utilizing such a procedure.

■ There should also be considered whether the furnishing of the information will be delayed to a certain number of days before trial, sufficiently in advance to give opportunity to the plaintiff to challenge, if necessary, and sufficiently close to afford additional protection to the defendant. Sealing and limited access should also be considered, the latter a mandatory requirement under *Richards* if appropriate objection is made. ■ Here the order is overly broad in giving the plaintiff access to the information as well as his counsel. There was no showing of a necessity for this in connection with the trial, and *Richards* specifically did not authorize such disclosure.

■ The extent of discovery must also be considered. In *Gierman* and *Rupert* it was correctly pointed out that the issue usually does not require much more than an ascertainment of the net worth of a defendant, and that the type of specific questions posed in the instant case dealing with assets, liabilities, property ownership and cash on hand constitute unnecessary harassment. The amount of punitive damages legitimately sought has a direct bearing on the extensiveness of discovery. The court should satisfy itself that the amount of the claim is reasonably related to the conduct charged. In this case the prayer asks for $100,000. Assuming it is a proper claim under the circumstances, inquiry might reveal that the defendant may be in a position to satisfy the claim if established without the necessity of a full and complete disclosure of all of his financial affairs. Not infrequently this can be accomplished by a simple request for a stipulation, or the furnishing of an already prepared financial statement, particularly where the defendant is a public corporation or business entity.

These suggested factors for consideration are not intended to be exhaustive, and cannot be so since the circumstances of each case where punitive damages are sought will vary. They are merely intended to be illustrative of what should be inquired into before a determination is made of the procedural technique to be applied in achieving the required balance of interests. Having considered all relevant factors, the lower court should be in a position to exercise its discretion in tailoring an appropriate order. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at pp. 380-384.) If that discretion is exercised properly, it is unnecessary to go to the lengths of ordering bifurcation, with its conceded

consequences of additional delay in judicial resolution, in order to protect the defendant's right to privacy with respect to his financial affairs.

■ The trial court failed to exercise its discretion in that it failed to consider the factors which we deem relevant to the framing of an appropriate protective order, including consideration of whether the plaintiff should be required to establish a prima facie case before proceeding with discovery. The record does not contain sufficient circumstances from which this court can issue directions for the framing of an appropriate protective order.

Let a peremptory writ of mandate issue directing the trial court to set aside its orders of July 11 and August 14, 1979 (LASC No. SWC 44295), set the matter for further hearing, and in the light of the facts adduced at such hearing and in accordance with the views expressed in this decision issue an appropriate protective order.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied January 9, 1980, and petitioners' application for a hearing by the Supreme Court was denied February 14, 1980. Mosk, J., was of the opinion that the application should be granted.