Robert BREAULT and Barbara Breault,
Plaintiffs-Appellees,

v.

Ed FRIEDLI; M. P. Sweeney: and Bill Berkley and Jim Woolems, individually and d/b/a Berkley Realtors, Defendants-Appellants.

Court of Appeals of Tennessee,
Middle Section.

Sept. 10, 1980.

Certiorari Denied by Supreme Court
Dec. 1, 1980.

OPINION

DROWOTA, Judge.

This interlocutory appeal is a case of first impression concerning the time and manner of discovery of a defendant's financial condition in an action for punitive damages.

The underlying cause of action in this lawsuit arose out of the sale of a liquor store business to the plaintiffs, Robert and Barbara Breault, by the defendant owners, Ed Friedli and M. P. Sweeney. Defendants Bill Berkley and Jim Woolems, individually and d/b/a Berkley Realtor, acted as the agent for plaintiffs in negotiating and consummating the sale.

On February 28, 1979, the plaintiffs brought suit against the defendants in the Chancery Court of Davidson County, alleging that defendants had made various fraudulent and negligent misrepresentations on which the plaintiffs relied in purchasing the business. The plaintiffs demanded both compensatory and punitive damages from all defendants. The defendants' answers denied the existence of any facts which would support punitive damages.

On August 20, 1979, plaintiffs took the deposition of defendant Berkley. Berkley refused to answer any questions concerning his personal assets, liabilities and financial status. Upon motion of the plaintiff, the Chancellor entered a decree on September 10, 1979, ordering Berkley to answer any questions propounded to him during discovery concerning his assets, liabilities and financial status.

On September 11, 1979, plaintiffs took the deposition of defendant Woolems. On the advice of counsel, Woolems answered the initial question asked him concerning the value of several of his assets. Woolems would not agree, however, to furnish a copy of his financial statement to plaintiffs' counsel except on the condition that plaintiffs' counsel withhold such information from the plaintiffs themselves. The plaintiffs did not agree to this condition where-

John J. Archer, Howser, Thomas, Summers, Binkley & Archer, Nashville, for plaintiffs-appellees.

Charles A. High, Jr., and Gail Pigg, Nashville, for defendants-appellants.

upon Woolems refused to answer any further questions concerning his financial status or to submit his financial statement to the plaintiffs.

Plaintiffs subsequently filed a motion on September 25, 1979 to compel Woolems to answer questions relating to his assets, liabilities and financial status. On September 28, 1979, Berkley and Woolems filed a motion for a protective order restricting the use of any financial information they might furnish to counsel only, pending a determination at trial that such evidence would be admissible. In a decree dated November 15, 1979, the Chancellor granted the plaintiffs' motion, ordering Woolems to respond to plaintiffs' questions, and denied the defendants' motion for a protective order.

On November 21, 1979, Woolems and Berkley, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, asked the Chancellor and this Court to grant an interlocutory appeal of the Chancellor's decree denying the motion for a protective order. This Court denied the application on the grounds that defendants failed to first obtain the Chancellor's permission to appeal as required by Rule 9. On January 3, 1980, the Chancellor granted defendants permission to appeal to this Court. Defendants again applied to this Court for an interlocutory appeal. We granted the application on January 18, 1980. Defendants Friedli and Sweeney are not parties to this appeal.

■ By way of legal background, punitive or exemplary damages are intended to punish the defendant for his wrongful conduct and to deter others from similar conduct in the future. *Liberty Mutual Ins. Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760 (1963); *Booth v. Kirk*, 53 Tenn.App. 139, 381 S.W.2d 312 (1963). They refer to the nature of the defendant's conduct rather than to the injury thereby inflicted. *Inland Container Corp. v. March*, 529 S.W.2d 43 (Tenn.1975). Conduct giving rise to punitive damages includes fraud, malice, gross negligence, oppression, and other wilful misconduct. *Inland, supra; Liberty, supra.*

■ Evidence concerning the financial condition of the defendant is essential in determining the amount of punitive damages.

. . . The damages which would operate as a proper punishment to one man might be inadequate to that effect upon another, by reason of their difference in pecuniary condition; and on the contrary, a verdict that would be scarcely regarded by a wealthy man, might be ruinous to a poor man.

*Odum v. Gray*, 508 S.W.2d 526, 534 (Tenn. 1974).

The first issue we are asked to determine is whether, in a cause whereby the complaint seeks punitive damages, defendants may be compelled by means of discovery to answer questions concerning personal assets, liabilities and financial status prior to a determination by the court or jury that punitive damages are permitted under the facts of the case.

■ The relevant Tennessee discovery rule provides in pertinent part:

. . . Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

TRCP, Rule 26.02(1). It is clear from the foregoing discussion of the law of punitive damages in Tennessee that a defendant's wealth in an action for punitive damages meets the test in Rule 26.02(1) of relevancy to the subject matter. The majority of other jurisdictions which have considered this issue have reached the same conclusion. See cases collected at Annot., 27 A.L.R.3d 1375 (1969).

■ The defendants contend, however, that this application of Rule 26.02(1) constitutes a violation of their rights under the United States and Tennessee constitutions.

They argue that the fourth amendment unreasonable search and seizure clause and the fifth amendment due process clause, as well as the corresponding provisions of the Tennessee Constitution in Article 1, §§ 7–8, guarantee protection against unreasonable intrusions upon their right to financial privacy. The gist of the defendants' contention is that this intrusion is unreasonable when disclosure is compelled upon the *mere allegation* of conduct giving rise to punitive damages.

Defendants propose to cure this constitutional infirmity by the use of a split-trial procedure. Under this procedure, the parties must first try the merits of the case. If the trial court or jury determines by a special verdict that punitive damages should be permitted, then discovery of defendant's financial condition is allowed. A second trial is then held to determine the amount of punitive damages to be awarded.

Defendants are unable to cite any relevant authority supporting their construction of either the state or federal constitutions. We are persuaded by *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), that there is no constitutional basis for postponing discovery in this case.

In *Schlagenhauf,* the defendant was required to undergo a physical and mental examination under Rule 35(a) of the Federal Rules of Civil Procedure. Rule 35(a) then provided:

> Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The defendant conceded that under *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), Rule 35 could be constitutionally applied to a plaintiff. The defendant contended, however, that a plaintiff who voluntarily initiates a lawsuit thereby impliedly waives the constitutional right of privacy. A defendant, whose appearance in a lawsuit is involuntary, cannot be said to have waived this right. Thus, in the absence of a waiver, Rule 35 as applied to a defendant violates the defendant's constitutional right to privacy.

The Court rejected this contention and stated:

> ... We can see no basis under the *Sibbach* holding for such a distinction. Discovery "is not a one-way proposition." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451. Issues cannot be resolved by a doctrine of favoring one class of litigants over another.
>
> .    .    .    .    .
>
> We hold that Rule 35, as applied to either plaintiffs or defendants to an action, is free of constitutional difficulty
>
> . . . .

85 S.Ct. at 240.

The interest in protecting the "inviolability of a person" asserted in *Schlagenhauf* is clearly greater than the interest in financial privacy asserted in the case at bar. *See Sibbach, supra,* 61 S.Ct. at 428 (Frankfurter, J., dissenting). Since the constitution does not prohibit an otherwise lawful physical or mental examination during discovery proceedings, it follows that it does not protect a defendant's financial condition from discovery.

*Schlagenhauf* is also persuasive authority on the application of Article 1, §§ 7–8 of the Tennessee Constitution to the compelled disclosure of defendants' financial condition. The Tennessee Supreme Court has stated:

> Since guarantees of the Fourth Amendment of the Federal Constitution against unreasonable searches and seizures now apply to states through the due process clause (*Mapp v. Ohio,* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, rehearing denied 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72), and this is

the supervening law of the land, federal cases on search and seizure must be abided by. And as our own constitutional provision, Article 1, § 7, is identical in intent and purpose with the Fourth Amendment, it is reasonable that we should not limit it more stringently than federal cases limit the Fourth Amendment, and so should regard such cases as particularly persuasive.

*Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968). In a similar manner, Article 1, section 8 has been held to be synonymous with the fifth and fourteenth amendments of the United States Constitution. *Daughtery v. State*, 216 Tenn. 666, 393 S.W.2d 739, cert. denied, 384 U.S. 435, 86 S.Ct. 1601, 16 L.Ed.2d 671 (1966).

The courts that have adopted the split-trial procedure, however, have not done so on the basis of constitutional considerations. In *Gierman v. Toman*, 77 N.J.Super. 18, 185 A.2d 241 (1962), the court held that "[j]ust and orderly procedure" was the source of the requirement that *"prima facie* proof of the right to punitive damages should precede the right to a general disclosure of wealth." *Id.*, 185 A.2d at 244. In addition, the court exercised its power "to protect the party or witness from annoyance, embarrassment, or oppression" during discovery proceedings. *Id.*

In the leading case of *Rupert v. Sellers*, 48 App.Div.2d 265, 368 N.Y.S.2d 904 (1975), the court, in justifying the split-trial procedure, stated:

In view of every citizen's right to privacy and the general desire of people not to divulge their wealth, on the one hand, and on the other hand, the ease with which a plausible claim for punitive damage may be made in many actions (including actions for double and treble damages authorized by various statutes), it is readily seen that a rule permitting unlimited examination before trial of a defendant as to his wealth in a punitive damage action could have unfortunate results. It could constitute undue pressure on defendants in such actions to compromise unwarranted claims.

*Id.*, 368 N.Y.S.2d at 911. We are not unmindful of the considerations articulated in *Rupert* and *Gierman*, but we think that the split-trial procedure creates more problems than it solves.

First, split-trial proceedings are rarely used in non-criminal cases in Tennessee. There is no established rule or procedure governing their operation.

In addition, under Tennessee law, a defendant's financial worth is only one factor in determining punitive damages.

In assessing the damages, the jury should take into consideration the attendant circumstances. So, particular matters which are to be considered are the nature of the case at bar, the nature or character of the act, the malice or wantonness of the act, the motive for the act, the manner in which it was committed, the injury intended or likely to result from a disregard of duty, the character and extent of the injury, and, according to some cases, the character of the parties, at least the character of defendant. In short, as a general rule, material matters to be considered in determining the amount are what will be a proper punishment for the offending person, and the deterrent effect of the award on others.

*Suzore v. Rutherford*, 35 Tenn.App. 678, 251 S.W.2d 129, 131 (1952).

The split-trial procedure will inevitably be accompanied by a delay between the first and second trials. It will often be impossible to retain for the punitive damages trial the jury which sat in the first trial. Yet if the jury changes, there will be no fair basis for the award. A different jury at the punitive damages hearing will be unable to hear and assess the type of evidence mentioned in *Suzore* that is essential in determining punitive damages.

Finally, a split-trial procedure diminishes the likelihood of a settlement. In interpreting Rule 26 of the Federal Rules of Civil Procedure on which TRCP 26.02(1) is patterned, a federal district court in South Carolina permitted pre-trial discovery of a defendant's net worth on the rationale that "[p]laintiff's knowledge of defendant's net

worth may lead to settlement and avoid protracted litigation." *Holliman v. Redman Development Corp.*, 61 F.R.D. 488 (D.C.S.C. 1973). We wonder how the parties can make an intelligent effort to settle when one party is deprived of information on which damages are based.

Having rejected defendant's proposal for a split-trial procedure, we are next asked to determine whether the defendants are entitled to a protective order whereby information regarding defendants' financial condition shall be disclosed in the presence of counsel only and thereafter held by the court under seal, pending a determination as to whether punitive damages are allowable.

The majority of courts have encountered no difficulty in granting protective orders prohibiting disclosure of a defendant's financial affairs beyond the parties and counsel to a lawsuit. See Annot., 27 A.L.R.3d 1375 (1969). The court in *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799 (Mo.App. 1972), stated the rationale behind the majority rule.

> By making an order that the deposition [interrogatory] shall remain sealed until ordered to be opened by the court, the court is able to prevent the deposition from being used for undesirable publicity purposes. By coupling such an order with an order that the examination shall be held with no one present except the parties to the action and their officers or counsel, the court may entirely remove the fear that the deposition is being taken for undesirable publicity purposes, or that confidential information will be generally disclosed to competitors.

The defendants in the case at bar, however, are asking this court to prohibit disclosure to the public and to the plaintiffs themselves.

We recognize that as a general rule, public disclosure stands on a different footing than disclosure to a party plaintiff. In a private lawsuit, the plaintiff has rights of discovery which are unavailable to the public at large. Moreover, settlement negotiations are futile if only counsel, rather than the parties themselves, have access to evidence material to the determination of damages.

Nevertheless, under certain circumstances the privacy interests of the defendant outweigh the discovery rights of the plaintiff. It is difficult to justify compelled disclosure of personal finances when the allegations of conduct supporting punitive damages have no basis in fact. We are aware that in some cases, a plaintiff, a competitor for instance, might be tempted to include in a lawsuit a frivolous allegation of conduct supporting punitive damages with the ulterior purpose of compelled disclosure of defendant's finances.

TRCP 26.03 permits the court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,...." We think that a protective order can be fashioned which protects the defendants' legitimate privacy rights while preserving the discovery rights of the plaintiffs.

In this regard the approach set forth in *Cobb v. Superior Court for Los Angeles County*, 99 Cal.App.3d 543, 160 Cal.Rptr. 561 (1980) is instructive. In *Cobb*, the court discussed but rejected the split-trial procedure of *Rupert v. Sellers, supra.* Instead, it proposed that a plaintiff first take discovery on the underlying merits of the case. If it appears from the discovery on the merits that a factual basis for punitive damages exists, then the plaintiff is permitted to discover the defendant's financial condition. The court pointed out that the plaintiff need not prove the case for punitive damages during discovery. The plaintiff is not even required to show that there is a substantial likelihood of recovery. The plaintiff must only show that some factual basis for punitive damages exists.

The procedures necessary to the adoption of the *Cobb* approach are well established in Tennessee law. TRCP 26.04 permits a trial court to specify the sequence and timing of discovery "for the convenience of the parties and witnesses and in the interests of justice." If the plaintiff is unable to show

through discovery that a factual basis for punitive damages exists, the trial court can prohibit discovery of the defendant's financial condition under TRCP 26.03(1).

The merit of the *Cobb* approach is that it prevents a plaintiff with a frivolous or meritless claim from using discovery for an ulterior purpose. On the other hand, the plaintiff who meets the factual basis test will be able to obtain discovery in time for trial preparation and/or settlement negotiations.

■ We adopt the *Cobb* approach subject to modifications relating to the nature of the case at bar. Since the defendants have already agreed to furnish the requested financial information on the condition that only counsel in the case be permitted access to it, there is no need either to prevent disclosure to plaintiffs' counsel or to enter an order effecting the timing of discovery.

■ Therefore, pursuant to TRCP 26.-03(5), we order the defendants to answer such questions concerning their financial conditions as are asked by the plaintiffs' counsel, provided that no one is present at the deposition except the defendants, counsel for defendants, counsel for the plaintiffs, and a court reporter. We further order that the answers submitted by defendants concerning their financial condition be sealed by the court until such time as the plaintiffs through discovery can show to the satisfaction of the court and according to the test developed in *Cobb, supra,* that there is some factual basis for the claim to punitive damages. Until the trial judge has so determined, counsel to plaintiffs are prohibited from disclosing to plaintiffs or anyone else the answers under seal. If the court determines that the plaintiffs are entitled to disclosure, we prohibit the disclosure of this information to anyone beyond the immediate parties and counsel to this lawsuit until such time as this action is brought to trial.

■ Finally, the briefs of the parties have touched on the issue of the extent of the discovery into defendants' financial conditions. We hold that the plaintiffs should be permitted to discover the net worth of the defendants and the income of each defendant for the last three years. In addition, plaintiffs are entitled to ask questions concerning individual assets and liabilities to the extent that the trial judge may determine that this is necessary to verify or impeach the general accuracy of the reported income and net worth of the defendants.

The decision of the trial court is affirmed in part and reversed in part. This cause is remanded to the Chancellor for proceedings in keeping with the opinion of this court.

*Affirmed in part; reversed in part; and remanded.*

TODD, P. J., concurs in a separate opinion.

LEWIS, J., concurs.

TODD, Presiding Judge, concurring.

With reluctance I concur in the principal opinion.

The principal reason for my reluctance is that a gross invasion of privacy is being perpetrated in the name of right, with the ultimate purpose being served for wrong.

Exemplary or vindictive damages, though clearly wrong in theory, are established as a rule in Tennessee. *Dougherty v. Shown,* 48 Tenn. (1 Heisk.) 302 (1870).

Punitive damages are wrong because they grant to the injured party a windfall to which the injured party has no natural right. If the injured party receives adequate compensatory damages there is no just reason to give him more.

Wrong doing should be punished but not by enriching the victim. Victims of crimes receive no windfall upon conviction of the perpetrator.

When a penalty is assessed for wrong doing, it belongs to the sovereign and should be paid into the public treasury. However, it should be recovered in an action, penal in nature, in which the accused has the benefit of all rights of the accused, including the presumption of innocence and the requirements of proof of guilt beyond a reasonable doubt. It is contrary to our

system of justice to punish particular wrongdoers upon mere preponderance of evidence.

Tennessee courts have permitted the continuance of a practice which admittedly is wrong, and now feel compelled to compound the wrong by a further imposition.

Exemplary damages have been recognized as wrong for nearly 100 years, since 1886. Now is the time to right the wrong.