862 F.2d 10
 8 U.S.P.Q.2d 1687
 GETTY PETROLEUM CORP., Plaintiff-Appellee,
v.
ISLAND TRANSPORTATION CORP., Skybolt Auto Service, Inc.,
Vito P. Gerbino, Vincent R. Gerbino, Thunderking, Inc.,
Tri-Star Brokers, Inc., Turgot Ozen, Salem Heat & Petroleum
Corp., and Lewis Cahill, Defendants,
Salem Heat and Petroleum Corp., and Lewis Cahill,
Defendants-Appellants.
SALEM HEAT & PETROLEUM CORP., and Lewis Cahill, Third-Party Plaintiffs,
v.
SKYBOLT AUTO SERVICE, INC., Thunderking, Inc., Vito P.
Gerbino, and Vincent R. Gerbino, Third-Party Defendants.
 No. 1289, Docket 88-7268.
 United States Court of Appeals,
Second Circuit.
 Argued June 23, 1988.
Decided Oct. 20, 1988.
As Amended Dec. 15, 1988.
 
 Carl S. Levine, Mitchel Field, N.Y. (Meredith Barg, Levine & Robinson, Mitchel Field, N.Y., of counsel), fordefendants-appellants.
 Robert G. Del Gadio, Garden City, N.Y. (Randolph E. White, Garden City, N.Y., of counsel), for plaintiff-appellee.
 C. Fred Weil, Jericho, N.Y. (Davis & Weil, Jericho, N.Y., of counsel), submitted brief for third-party defendants-appellees.
 Before NEWMAN, KEARSE, and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal from the Eastern District of New York presents four issues of law arising from the infringement of a registered trademark. Appellants Salem Heat & Petroleum Corp. and Lewis Cahill appeal from a jury verdict which found that they had secretly and unlawfully sold and delivered non-Getty brand gasoline to two Long Island Getty-branded service stations in 1985 and 1986, intentionally infringing the Getty trademark. The jury assessed compensatory and punitive damages in favor of the plaintiff, Getty Petroleum Corp. The case required two trials in the district court. It seems that everything has an end except this litigation, because though the compensatory damages portion of the judgment is affirmed, the award of punitive damages must be reversed and the case remanded to the district court for further consideration of punitive damages under New York law.
 
 BACKGROUND
 
 2
 The facts relating to this appeal may be stated briefly. As a condition to its approval of the 1984 purchase of the Getty Oil Company by Texaco, Inc., the Federal Trade Commission required Texaco to transfer the "Getty" tradename and trademark and to divest itself of the acquired company's northeastern marketing facilities. Power Test Corp. bought Getty Oil's northeastern business in February, 1985 from Texaco and obtained an exclusive trademark license for the "Getty" marks. On July 11, 1985 ownership of the "Getty" marks was transferred to Power Test, which thereupon changed its name to Getty Petroleum Corp. (Getty Petroleum). Getty Petroleum continued the business formerly conducted by Getty Oil and is the plaintiff in this litigation.
 
 
 3
 Appellant Salem Heat & Petroleum Corp. (Salem), a Port Washington, New York distributor of gasoline and petroleum products, is owned and operated by appellant Lewis Cahill. Salem sold and delivered approximately 500,000 gallons of non-Getty gasoline to Getty-branded service stations in Middle Village and Garden City Park, New York, in 1985 and 1986. At both stations this gasoline was sold as Getty-brand gasoline in violation of the franchise agreements between appellants and Getty Petroleum.
 
 
 4
 In 1986 Getty Petroleum brought a diversity suit in the United States District Court for the Eastern District of New York (Mishler, J.) against the above two stations' owners and operators. Getty Petroleum also sued three gasoline distributors--including Salem--and their two owners and operators--one of whom is Cahill--seeking injunctive relief and damages for these defendants' infringement of the Getty trademark. In particular, plaintiff's amended complaint alleges that defendants' actions constituted: infringement of its federally registered trademark causing irreparable damage to its goodwill and reputation (Count I); false designation of origin, false description and false representation of the gasoline in violation of the Lanham Trademark Act of 1946, 15 U.S.C. Sec. 1125(a) (Count II); unfair competition (Count III); dilution of the quality of the Getty mark in violation of N.Y.Gen.Bus.Law Secs. 368, 368-d (Count IV); and false and misleading advertising in violation of N.Y.Gen.Bus.Law Secs. 350, 350-d (Count V). Seven of the nine named defendants--other than the two appellants Salem and Cahill--settled with plaintiff Getty Petroleum before trial.
 
 
 5
 The gravamen of Getty Petroleum's claims against appellants Salem and Cahill--which, as noted, has been the subject of two jury trials--was that they infringed the Getty mark by delivering non-Getty gasoline to Getty-branded service stations. At the first trial held in November, 1987 appellants conceded the substance of plaintiff's allegations, but attempted to prove that Getty had acquiesced in the infringement. The jury was not persuaded, and returned a special verdict finding that appellants had "knowingly and intentionally contributorily infringe[d]" the Getty trademark as to both service stations, and assessed their joint proportionate share of fault at 50 percent. The jury found that "as a result of the activities of Salem and/or Cahill," plaintiff's lost profits at the Middle Village station were $39,335 and at the Garden City Park station were $3,920, the sum of which is the $43,255 awarded plaintiff as compensatory damages. Finally, having found appellants' actions to have been done intentionally and "with a callous disregard for the rights of Getty in its trademark," the jury assessed punitive damages against appellants in the amount of $875,000.
 
 
 6
 Following that verdict, appellants moved, inter alia, for a judgment notwithstanding the verdict (j.n.o.v.) pursuant to Fed.R.Civ.P. 50(b) or, alternatively, for a remittitur of the punitive damages award. Judge Mishler denied the former relief, but granted appellants' motion to vacate the $875,000 punitive damages award unless Getty agreed to remit the sum of $775,000 and to accept the balance of $100,000. Counsel for Getty Petroleum elected on behalf of his client not to accept the remittitur. The district court thereupon vacated the punitive damage award because it found the $875,000 verdict so high as to shock its conscience. Judge Mishler then ordered a second trial limited to the issue of punitive damages. Ironically, at the second trial, the jury returned an even larger verdict for plaintiff, this time awarding $1 million in punitive damages. Appellants again unsuccessfully moved for a j.n.o.v.
 
 
 7
 Accordingly, in its March 4, 1988 Decision and Order, the district court granted plaintiff judgment for a total of $43,255, plus 6 percent interest, in compensatory damages, $1 million in punitive damages, and attorney fees for the first trial. Getty Petroleum was later awarded attorney fees for the second trial. In addition, Judge Mishler denied Salem and Cahill's request for a set-off of the compensatory damage award against the amounts paid by the settling tortfeasors, and dismissed sua sponte their third-party complaint for contribution against the operators of the Middle Village station. The district court judge carefully reviewed the additional evidence regarding punitive damages presented at the second trial and declined to vacate this award, as he had after the first trial. From this judgment, Salem and Cahill appeal.
 
 DISCUSSION
 
 8
 Four issues are raised: (1) the propriety of the punitive damages award; (2) the district court's refusal to bifurcate the liability and damages issues for trial; (3) its refusal to reduce appellants' liability for compensatory damages; and (4) the dismissal of appellants' third-party complaint seeking contribution from settling co-defendants.
 
 I Punitive Damages
 
 9
 Appellants first argue that punitive damages are not available as a remedy under Sec. 35 of the Lanham Act, 15 U.S.C. Sec. 1117(a) (Supp. IV 1986). Recently, we ruled on this issue in Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103 (2d Cir.1988) (Getty I ). In Getty I, we examined the language of Sec. 35 of the Lanham Act, its legislative history and the relevant case law. Such analysis persuaded us that Sec. 35 does not authorize an award of punitive damages for a willful infringement of a registered trademark. Consequently, the punitive damages awarded in the instant case--which will be referred to hereafter for purposes of clarity as Getty II--must be vacated.
 
 
 10
 Nevertheless, the instant case differs from Getty I in one significant respect. In Getty I, before the case was submitted to the jury, plaintiff withdrew all of its asserted causes of action, except its claim of trademark infringement in violation of the Lanham Act. Thus, the only theory of recovery considered by the jury--which awarded compensatory and multimillion dollar punitive damages--was federal infringement. On appeal, the principal issue in Getty I was whether punitive damages are available under Sec. 35 of the Lanham Act. Holding that such an award was not authorized, we reversed that portion of the verdict. In Getty II, on the other hand, plaintiff did not withdraw its non-Lanham Act claims. Although defense counsel asked that all but the federal infringement claims be dismissed as duplicative, the district judge refused, reasoning that it would be better to submit fact questions to the jury in order to determine the answers to the legal issues raised by the five counts, and that Getty Petroleum had raised sufficient questions on its state law claims to withstand appellants' motion to dismiss.
 
 
 11
 An award of punitive damages might still be an available remedy for Getty Petroleum's non-Lanham Act causes of action in the instant case. 2 J. McCarthy, Trademarks and Unfair Competition, Sec. 30:29(A) at 517 (2d ed. 1984) ("In jurisdictions where punitive damages are available in tort cases, they are equally allowable in cases of trademark infringement and unfair competition."); see Le Mistral, Inc. v. Columbia Broadcasting System, 61 A.D.2d 491, 494-95, 402 N.Y.S.2d 815 (1st Dept. 1978) (punitive damages recoverable in ex delicto actions based upon malice, fraud, wanton or reckless disregard of plaintiff's rights or where the wrong is aggravated by evil motive), appeal dismissed, 46 N.Y.2d 940 (1979); see also Roy Export Co. v. Columbia Broadcasting System, 672 F.2d 1095, 1106 (2d Cir.) (New York law authorizes punitive damages for unfair competition, and federal copyright policy against punitive damages is irrelevant), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); Underwriters' Laboratories v. Smith, 41 Misc.2d 756, 756, 246 N.Y.S.2d 436 (Sup.Ct. Kings Cnty. 1964) (assessing punitive damages for unfair competition).
 
 
 12
 Yet, because the district court did not expressly determine whether: (1) plaintiff's non-Lanham Act claims were still alive at the close of the trial; (2) punitive damages may be awarded under the law of New York for those claims; (3) plaintiff had proved its state law causes of action, we must remand this case for it to determine whether plaintiff proved any non-Lanham Act claims for which punitive damages would be available under New York law.
 
 
 13
 Salem and Cahill further urge that even if they were liable for punitive damages, the second jury's award of $1 million is grossly excessive. They point out that such an award constitutes approximately 50 percent of their net worth and is likely to ruin them financially. Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to a plaintiff's injury and defendant's malicious intent. See Lerman v. Flynt Distributing Co., 745 F.2d 123, 141-42 (2d Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985) (libel); Universal City Studios v. Nintendo Co., 615 F.Supp. 838, 863 (S.D.N.Y.1985) (tortious interference with contract), aff'd, 797 F.2d 70 (2d Cir.), cert. denied, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). Here the ratio of compensatory damages--which are not nominal--to punitive damages is approximately 4:100, which appellants contend is unreasonably disproportionate.
 
 
 14
 We agree that a punitive damage award in the amount of $1 million on these facts is grossly disproportionate to the proven actual damages. Therefore, on remand, if Judge Mishler finds that Getty has demonstrated its entitlement to punitive damages under New York law, judgment should be entered in an amount not to exceed $250,000, since any amount larger than that would be "so high as to shock the judicial conscience and constitute a denial of justice." See Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir.1978). Because all the facts are before the district court in the trial records, there is no need for a third jury trial in this matter. Instead, the trial court should now decide the three recited questions on which it had not previously expressly ruled.
 
 II Bifurcated Trial
 
 15
 Before the first trial, Salem and Cahill requested a bifurcated trial, limited to the issues of infringement, appellants' share of damages, if any, and plaintiff's entitlement to punitive damages. A second trial, if necessary, would have addressed the amount of punitive damages. Judge Mishler denied the request. Appellants now contend that New York law requires a bifurcated trial, and that the jury's determination respecting liability was prejudiced by Getty Petroleum's having focused on Cahill's net worth, and attacking Cahill's credibility on that issue.
 
 
 16
 In Rupert v. Sellers, 48 A.D.2d 265, 368 N.Y.S.2d 904 (4th Dept. 1975), New York's Appellate Division, Fourth Department, held that evidence of a defendant's wealth is not relevant to deciding whether a plaintiff is entitled to punitive damages. Only after it has been determined by special verdict that a defendant's conduct entitles a plaintiff to such damages is it necessary or appropriate for a defendant's financial resources to be introduced into evidence. Id. at 272, 368 N.Y.S.2d 904. We have approved this approach. See Brinks Inc. v. City of New York, 717 F.2d 700, 707 (2d Cir.1983). Nonetheless, whether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court. See Fed.R.Civ.P. 42(b); Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir.), cert. denied, sub nom. Cody v. Donovan, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). The district court thought that requiring the jury to render a special verdict on liability might disqualify that jury if it later needed to decide the issue of damages. Although we disagree with that view, defendant did not seek to persuade the trial court that a second jury would not be required, and we cannot say that the district court's refusal to bifurcate the trial in the interests of judicial expediency was an abuse of its discretion. Further, though the jury decided the damages issue against defendant Cahill, it could well have done so because of the blatant inconsistencies in his testimony, rather than on account of the evidence of his wealth. Hence, we are not persuaded that proof pertaining to Cahill's net worth prejudiced the jury's determination of liability.
 
 III Compensatory Damages
 
 17
 Appellants' third argument is that the district court erred in not allowing a setoff of the compensatory damage award in an amount equivalent to that paid by the settling tortfeasors. New York law provides that when a codefendant tortfeasor settles with the plaintiff, the release "does not discharge any of the other tortfeasors from liability for the injury ..., but it reduces the claim of the releasor against the other tortfeasors" by the greatest of: (1) the amount stipulated in the release; (2) the amount actually paid; or (3) the amount of the released tortfeasor's equitable share of the damages. N.Y.Gen.Oblig.Law Sec. 15-108 (McKinney 1978). Section 15-108 applies to actions brought under federal statutes in New York. See First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon & Co., 631 F.Supp. 1029, 1036 (S.D.N.Y.1986) (federal securities claims).
 
 
 18
 After the first jury trial, Salem and Cahill moved to have the $43,255 compensatory damage award decreased under Sec. 15-108 because Getty had settled with its co-defendants. At a hearing on their motion for offset, appellants argued that the compensatory award for their share of the infringement at the Middle Village station--$39,335--should be reduced in light of the $52,500 plaintiff received in settlement from Vito and Vincent Gerbino (and their corporate alter egos), operators of the Middle Village station. They urged similarly that the compensatory award of $3,920 for infringement at Garden City Park station should be reduced given Getty's receipt of $10,000 from Daniel Feigenbaum, the station's operator, arguing that Getty had already received more than the total amount of damages attributable to that station. Alternatively, appellants asked to have the compensatory award offset by 50 percent because the jury fixed their share of liability at that percentage.
 
 
 19
 Judge Mishler declined to offset the compensatory damage award because appellants failed to establish that payments made to Getty by the settling defendants were for the same injury. The district court, for example, found Feigenbaum's settlement represented actual and punitive damages as well as attorney fees and costs, that the operators of the Middle Village station settled for actual and punitive damages, attorney fees and costs, and that the settlements by two other distributors (Tri-Star Brokers and Island Transportation Corp.) covered all of Getty's possible claims for deliveries to those Getty stations. Hence, the district court held that offset was not appropriate here. We agree.
 
 
 20
 As noted, the special verdict form asked the first jury to calculate Getty Petroleum's lost profits at the Middle Village and Garden City Park stations "as a result of the activities of Salem and/or Cahill." The compensatory damages assessed against appellants were intended to remedy Getty Petroleum's injury stemming solely from appellants' contributory infringement. Because the jury's compensatory award did not take into account plaintiff's injuries attributable to the settling codefendants, Salem and Cahill may not invoke Sec. 15-108 to decrease their liability for compensatory damages by virtue of these settlements. See Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir.1986) (where distinct injuries caused by different defendants, Sec. 15-108(a) does not apply, and no grounds for offset exist).
 
 IV Contribution
 
 21
 The final issue raised concerns contribution. Salem and Cahill filed a third-party complaint for contribution against the Gerbinos, Sky Bolt Auto Service, Inc., and Thunderking, Inc. with respect to liability for trademark infringement at the Middle Village station. The district court severed this claim from the trial on the ground that it would unduly delay the trial of Getty Petroleum's claims. In his March 4, 1988 Decision and Order, Judge Mishler dismissed sua sponte appellants' third-party complaint, holding that appellants had no claim of contribution against the operators of the Middle Village station.
 
 
 22
 Appellants argue that there is generally an implied right of contribution among joint tortfeasors which should apply to the Lanham Act, citing three securities cases: Sirota v. Solitron Devices, Inc., 673 F.2d 566, 578 (2d Cir.), cert. denied, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); Tucker v. Arthur Andersen, 646 F.2d 721, 727 n. 7 (2d Cir.1981); Stowell v. Ted S. Finkel Inv. Servs., 641 F.2d 323, 325 (5th Cir.), reh'g denied, 647 F.2d 1123, (1981). There is no federal common law of contribution, even though there are a few instances where federal common law has been formulated when " 'necessary to protect uniquely federal interests.' " Texas Indus. v. Radcliff Materials, Inc., 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981), quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964). The securities statutes at issue in the cases relied upon by appellants provide for specific rights of contribution, see Texas Indus., 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11, whereas the trademark statute at issue here does not.
 
 
 23
 Further, the Supreme Court refused to imply a right of contribution under the Equal Pay Act and in Title VII, stating "[t]he comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." Northwest Airlines v. Transport Workers Union, 451 U.S. 77, 93-94, 101 S.Ct. 1571, 1581-82, 67 L.Ed.2d 750 (1981). The Court was not swayed by its decisions to imply a right of contribution in other areas of the law, such as admiralty, because in that area Congress had given the courts the power to fashion the controlling rules of substantive law. Thus, admiralty law is a "narrow exception." Id. at 95-96, 101 S.Ct. at 1582-83. In a similar vein, the Supreme Court refused to imply a right of contribution under the antitrust laws in Texas Industries, noting--in rejecting an argument that contribution should be implied as readily as joint and several liability--that it is up to Congress, not the courts, to provide a right of contribution. 451 U.S. at 646, 101 S.Ct. at 2069.
 
 
 24
 As already discussed, the jury assessed compensatory damages for Getty Petroleum's lost profits which resulted from appellants' contributory infringement of the Getty mark. The third-party defendants may not be held jointly liable for that portion of Getty Petroleum's injury. No express right of contribution exists under the Lanham Act, and Judge Mishler correctly concluded that it was inappropriate to imply such a right.
 
 CONCLUSION
 
 25
 The judgment of the district court is affirmed in part and reversed in part, the punitive damages award is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 ON MOTION FOR CLARIFICATION
 
 26
 Salem Heat & Petroleum Corp., and Lewis Cahill, defendants-appellants, moved by notice of motion filed on November 1, 1988 for clarification of the above Opinion and Order both dated October 20, 1988. The motion for clarification is granted.
 
 
 27
 The issue requiring clarification is plaintiff-appellee Getty Petroleum Corp's entitlement to attorney's fees incurred in connection with its attempt to establish a claim for punitive damages. At issue are attorney's fees of $78,605.46 for the second trial between these parties, which was paid in full by Salem and Cahill, and which Getty now refuses to return.
 
 
 28
 In light of this, the district court should proceed to decide (1) whether punitive damages are recoverable under New York law; and if so, (2) whether attorneys fees may be awarded in connection with a New York punitive damage recovery. If such is the case, the plaintiff should receive an attorney's fee reasonable for the time spent proving only its state law punitive damages claim. In determining the amount of time reasonably spent by the plaintiff to prove state law punitive damages, the district court may include that portion of time spent proving the plaintiff's federal law punitive damages claim that would have had to be spent proving its state law punitive damages claim, i.e., the time saved in proving the state law claim because of the proof on the federal law claim. If the amount is less than the $78,605.46 already paid by appellants, the balance should be returned by Getty.
 
 
 29
 In the event that plaintiff is either not entitled to punitive damages under New York law or not entitled to an award of attorney's fees based on such damages, then the entire fee paid Getty for the federal punitive damages should be returned to appellants.