**GETTY PETROLEUM CORP.,**
**Plaintiff–Appellee,**

v.

**ISLAND TRANSPORTATION CORP., Skybolt Auto Service, Inc., Vito P. Gerbino, Vincent R. Gerbino, Tri–Star Brokers, Inc., Turgot Ozen, Salem Heat & Petroleum Corp., and Lewis Cahill, Defendants.**

**Appeal of SALEM HEAT & PETROLEUM CORP., and Lewis Cahill, Defendants.**

**No. 1130, Docket 89–7088.**

United States Court of Appeals, Second Circuit.

Argued May 10, 1989.

Decided June 30, 1989.

Robert G. Del Gadio, Garden City, N.Y. (Randolph E. White, Del Gadio & White, Garden City, N.Y., on the brief), for plaintiff-appellee.

Carl S. Levine, Mitchel Field, N.Y. (Levine & Robinson, Mitchel Field, N.Y., on the brief), for defendants-appellants.

Before KEARSE, CARDAMONE, and PIERCE, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Salem Heat & Petroleum Corp. and its proprietor Lewis Cahill (collectively "Salem") appeal from so much of a final amended judgment entered in the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, as awarded plaintiff Getty Petroleum Corp. ("Getty") $250,000 in punitive damages on its state-law claim for unfair competition on account of Salem's sale of non-Getty gasoline for resale under the Getty trademark. On this appeal, Salem attacks the amended judgment, which was entered following a remand from this Court on Salem's prior appeal, *Getty Petroleum Corp. v. Island Transportation Corp.*, 862 F.2d 10 (2d Cir.1988) ("*Salem I*"), cert. denied, — U.S. —, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989), contending principally that Getty's claim for unfair competition was no longer extant after trial and had not been proven, and that in any event, under New York law punitive damages are not available for unfair competition. Finding no merit in Salem's contentions, we affirm.

## I. BACKGROUND

The events leading to this lawsuit are described in detail in *Salem I*, familiarity with which is assumed, and will be only briefly summarized here. In 1985 and 1986, Salem sold and delivered approximately 500,000 gallons of non-Getty gasoline to two Getty-brand service stations in New York. At both stations this gasoline was sold as Getty gasoline, in violation of Getty's franchise agreements with the station owners. In 1986, Getty sued the station owners and Salem, seeking injunctive relief and damages on five counts, including trademark infringement and false designation of origin, in violation of the Lanham Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051 *et seq.* (1982 & Supp. V 1987); unfair competition in violation of state law; and other violations of state law.

### A. The Verdicts at the First and Second Trials

The first trial with respect to these claims took place in November 1987. At that trial, the defendants conceded the substance of Getty's allegations but attempted to prove that Getty had acquiesced in the sale of non-Getty gasoline as Getty gasoline at these two stations. The jury rejected this contention and returned a special verdict finding that Salem had "knowingly and intentionally contributorily infringe[d]" the Getty trademark. It awarded Getty compensatory damages totaling $43,255 and punitive damages in the amount of $875,000.

Defendants moved for, *inter alia*, a remittitur of the punitive damages award. The district court, finding the award of $875,000 so high as to shock the judicial conscience, granted the motion to vacate unless Getty agreed to accept a reduction of that award to $100,000. Getty declined, and a new trial on the issue of punitive damages was ordered. At the second trial, the jury awarded Getty punitive damages in the amount of $1 million.

The court declined to disturb this second punitive damages award, and judgment ("original judgment") was entered in favor of Getty.

### B. This Court's Decision in Salem I

Salem appealed the original judgment to this Court, challenging, *inter alia*, the propriety of the punitive damages award. To the extent pertinent here, it argued principally that punitive damages were not available as a remedy under the Lanham Act, that the evidence was insufficient to support an award of punitive damages under that Act, and that the award of $1 million was excessive. Salem took the position that only Getty's Lanham Act claims were at issue, stating that if we accepted the contention that punitive damages were unavailable under the Act as a matter of law, questions of insufficiency of the proof and excessiveness of the award would "become[ ] moot."

We agreed that the punitive damages award should be vacated, since we had recently ruled in *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103 (2d Cir.1988) (*"Bartco "*), *cert. denied,* — U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), that the Lanham Act does not authorize an award of punitive damages. Nonetheless, we rejected Salem's contention that our *Bartco* ruling foreclosed Getty's recovery of punitive damages against Salem because in the present case, unlike in *Bartco,* Getty had not withdrawn its non-Lanham Act claims, nor had those claims been dismissed. Thus, we noted that Getty

> did not withdraw its non-Lanham Act claims. Although defense counsel asked that all but the federal infringement claims be dismissed as duplicative, the district judge refused, reasoning that it would be better to submit fact questions to the jury in order to determine the answers to the legal issues raised by the five counts, and that Getty Petroleum had raised sufficient questions on its state law claims to withstand appellants' motion to dismiss.

*Salem I,* 862 F.2d at 13–14. When the jury answered the submitted fact questions, the trial judge concluded that the answers warranted Getty's recovery of both compensatory and punitive damages under the Lanham Act (*Bartco* not yet having been decided), and he did not further mention the state-law claims. Thus, in *Salem I,* this Court, having determined that punitive damages were not available on the Lanham Act claim but that they might be available on one of Getty's state-law claims, remanded for further proceedings:

> because the district court did not expressly determine whether: (1) plaintiff's non-Lanham Act claims were still alive at the close of the trial; (2) punitive damages may be awarded under the law of New York for those claims; (3) plaintiff had proved its state law causes of action, we must remand this case for it to determine whether plaintiff proved any non-Lanham Act claims for which punitive

damages would be available under New York law.

*Salem I,* 862 F.2d at 14.

We also agreed with Salem that the award of $1 million was excessive, ruling that

> on remand, if Judge Mishler finds that Getty has demonstrated its entitlement to punitive damages under New York law, judgment should be entered in an amount not to exceed $250,000, since any amount larger than that would be "so high as to shock the judicial conscience and constitute a denial of justice."

*Id.* (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)). We noted that "[b]ecause all the facts are before the district court in the trial records, there is no need for a third jury trial in this matter. Instead, the trial court should now decide the three recited questions on which it had not previously expressly ruled." *Salem I,* 862 F.2d at 14.

### C. *The District Court's Decision on Remand*

On remand, the district court answered all three questions in the affirmative. As to the survival of Getty's state-law claims, it found as follows:

> Getty did not withdraw its non-Lanham Act claims. The claim made by Salem and Cahill that this court, by referring in its charge to trademark infringement (and not to unfair competition), and similarly presenting the fact questions to the jury, demonstrates that Getty abandoned all the non-Lanham Act claims, is rejected. Plaintiff's counsel made it clear at the pre-charging conference that Getty's theory of liability included unfair competition by defendants and that trademark infringement constituted unfair competition. At the close of the evidentiary part of the case, in response to defendants' counsel's motion to dismiss the non-Lanham Act claims, the court in denying the motion explained that theories of liability remain for the court after the jury has decided the fact issues.

Memorandum of Decision ("Decision") at 3–4.

The court found that Getty had "proved its claim of unfair competition in establishing the knowing and intentional infringement by defendants of its trademark rights." *Id.* at 6. It ruled that punitive damages are available for such a claim under New York law, stating as follows:

The Circuit Court's opinion answers the question of the availability of punitive damages in an unfair competition case under New York law citing *Roy Export Co. v. Columbia Broadcasting System, Inc.,* 672 F.2d 1095, 1106 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness....)[.] Were we bound by the principle stated in *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961) that punitive damages may be awarded only in an action where the fraud is aimed at the public, we would find that condition satisfied. The deception practiced in selling non-Getty gasoline as Getty gasoline was indeed aimed at the ultimate consumer— the motoring public. *See The Wisser Co., Inc. v. Mobil Oil Corp.,* 730 F.2d 54, 60 (2d Cir.1984).

Decision at 7.

The amended judgment was entered ordering Salem to pay Getty, *inter alia,* punitive damages in the amount of $250,000. This appeal followed.

## II. DISCUSSION

On appeal, Salem urges us to find that Getty's non-Lanham Act claims were not alive at the close of the first trial, or that Getty failed to prove its state-law claim for unfair competition, or that punitive damages are not available for such a claim under New York law. We find no merit in these contentions.

### A. *The Survival of Getty's Non–Lanham Act Claims*

 Salem argues principally that Getty's non-Lanham Act claims did not survive because they were not submitted to the jury. The premise underlying this argument is that the form of special verdict used in the present case was the same as that used in *Bartco,* and we said in *Bartco* that non-Lanham Act claims had not been submitted to the jury. Though the premise is accurate, it does not warrant Salem's conclusion because Salem has ignored the procedural difference between the two cases, *i.e.,* that Getty withdrew its non-Lanham Act claims in *Bartco* but not in the present case. We did not rule in *Bartco* that the interrogatories themselves were insufficient to elicit findings that would have been pertinent to non-Lanham Act claims; since Getty had withdrawn those claims, obviously the *Bartco* jury was not asked to decide them. Thus, the form of the interrogatories was not dispositive, and the fact that the same form was used here does not mean that Getty's unwithdrawn, undismissed non-Lanham Act claims were not submitted to the *Salem I* jury.

Salem also argues that the non-Lanham Act claims must not have survived because the jury was not instructed as to the law on such claims. This argument too misses the mark. Fed.R.Civ.P. 49(a) allows the court to require the jury to return a special verdict that decides only issues of fact. This was the procedure used in the present case. Thus, when the court denied Salem's motion to dismiss the non-Lanham Act claims, it explained to the parties that "theories of liability [would] remain for the court after the jury ha[d] decided the fact issues." Decision at 4. Thereafter, in the charging conference, when Salem objected to the court's giving the jury any instruction as to Getty's unfair-competition theory, the court, noting Getty's contention that the state-law concept of unfair competition encompassed trademark infringement, decided not to instruct the jury on the state-law theory and stated that

[t]he jury is going to be asked: Did they sell unbranded gasoline as brand gasoline and did the defendant knowingly and intentionally contribute to that infringement? If they did, Getty isn't concerned with under what theory they recover.

The court stated that, assuming establishment of contributory infringement, the matter of whether Salem's acts also constituted a violation of state law was "a conclusion that the Court can make based on the findings." Salem concedes in its brief on the present appeal that the trial court "consistently asserted throughout" that only fact questions would be submitted to the jury, leaving it to the court to decide how the various theories of liability applied to the facts found.

The provision of Rule 49(a) that requires the court to "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue" did not require the court in the present case to instruct the jury separately on the law of unfair competition. To the extent pertinent here, conduct that constitutes trademark infringement also constitutes unfair competition in violation of New York law. *See, e.g., Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 497 n. 1 (2d Cir.1962); *Dell Publishing Co. v. Stanley Publications, Inc.*, 9 N.Y.2d 126, 133, 211 N.Y.S.2d 393, 398, 172 N.E.2d 656 (1961). Thus, we conclude that the instructions to the jury were adequate to permit it to make findings of fact that were pertinent to both the Lanham Act claims and the claim of unfair competition.

Given that Getty did not withdraw its non-Lanham Act claims, that the court did not dismiss them, and that the court consistently stated that it would decide how the legal theories applied to the facts found by the jury, we conclude that the court's finding that Getty's non-Lanham Act claims were still alive was not clearly erroneous.

### B. The Finding that Getty Proved Its Claim of Unfair Competition

The district court found on remand that Getty had established its right to recover on its state-law claim of unfair competition. Salem challenges this ruling on the grounds that (a) Getty was required to prove actual confusion, (b) the jury did not find actual confusion, and (c) Getty's proof was insufficient as a matter of law to establish actual confusion. It argues, quoting *G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d 499, 501 (2d Cir.), *cert. denied*, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944), that in order to establish a right to monetary relief for unfair competition under New York law, "it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's." Salem argues that the jury's verdict on the Lanham Act claims did not establish Getty's right to damages on its state-law claim of unfair competition, apparently contending that recovery of damages under the Lanham Act requires only proof of likelihood of confusion, not proof of actual confusion; thus Salem contends that the jury did not decide whether there had been actual confusion. And it argues that Getty failed to prove actual confusion because it produced no consumer witnesses or survey evidence at trial. For several reasons, we reject the contentions that actual confusion was either not adequately shown at trial or not adequately found by the factfinder.

First, Salem's premise that a Lanham Act claimant need not show actual confusion to recover damages is erroneous. A Lanham Act plaintiff seeking damages is normally required to prove "actual consumer confusion or deception resulting from the violation." *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir.1987); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir.1981) (dictum); *see also G.H. Mumm Champagne v. Eastern Wine Corp.*, 142 F.2d at 501 ("to recover damages or profits, *whether for infringement of a trademark or* for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's" (emphasis added)).

Second, arguably the jury did find actual consumer confusion. It was instructed, *inter alia*, that in order to find Salem liable for contributory infringement, it must find not only that Salem "knew that the gas station was selling non-Getty

gas as Getty gas and knowing that intentionally sold non-Getty gas to the Getty gasoline service station knowing that it would be sold to the public as Getty gasoline," but also that "a reasonably prudent motor vehicle driver would drive up to that pump *and believe* it was Getty gasoline" (emphasis added). Having been thus instructed, the jury's finding that Salem "knowingly and intentionally contributorily infringe[d] the Getty trademark" may be viewed as an implicit finding that the consuming public actually believed the non-Getty gasoline supplied by Salem was Getty gasoline.

■ Further, even if the jury did not implicitly make a finding of actual confusion, the absence of such a finding would not warrant reversal of Getty's judgment on the unfair-competition claim. Rule 49(a) provides that if the court, in submitting special verdict questions to the jury,

> omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Fed.R.Civ.P. 49(a). Salem did not ask that a question focusing precisely on actual confusion be submitted to the jury; indeed, it urged that no issue that it deemed pertinent solely to unfair competition be submitted to the jury. As a result, if the question of actual confusion was not submitted to the jury, Salem waived its right to have that question decided by the jury. The trial court noted that Salem's deception had been "aimed at the ultimate consumer—the motoring public." Thus, even if a finding of actual confusion were not implicit in the jury's verdict, such a finding is implicit in the statement of the trial court.

■ We also reject Salem's contention that such a finding is unsupportable because Getty failed to prove specific incidents of actual confusion or to present consumer surveys. Consumer witnesses or surveys are not a *sine qua non* of proof of actual confusion in a case where the product falsely presented cannot be meaningfully inspected by the consumer. For example, in *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d at 272, we upheld a jury finding of actual consumer confusion as to whether the record albums sold by the defendant contained feature performances by Jimi Hendrix, as advertised, despite the fact that the plaintiff presented no surveys or anecdotal evidence of such confusion. We reasoned that that type of evidence was not critical to the plaintiff's case since, *inter alia*, the customer does not have an opportunity to listen to the record before purchasing it. In the context of gasoline purchases, we have noted that if the defendant "was engaged in passing off non-Mobil gasoline under the Mobil trademark, ... it was perpetrating a fraud on the public." *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir.1984) (affirming denial of station owner's motion under Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (1982), for preliminary injunction against termination of franchise).

■ In the present case, the record was sufficient to support a finding of actual confusion without surveys or anecdotal evidence. It clearly revealed that the non-Getty product was sold to consumers under the Getty trademark without any notice or suggestion to them that it was not Getty gasoline. The jury was entitled to use its common sense to reason that purchasers at those stations, who would have no way of knowing the truth, were certainly deceived by and unaware of the substitution. Further, Salem appeared to concede from the outset of the first trial that the public had no idea that what it was purchasing under the Getty trademark was in fact non-Getty gasoline. Thus, in his opening statement to the jury, Salem's attorney stated as follows:

> Mr. Del Gadio [Getty's attorney] talked about "fraud to the public." Just remember Cahill [,] Salem and myself we're public too and all of us we go into an Exxon station. We expect to get Exxon gasoline. We go into a Mobil[ ] station.

If you go out and buy Rolling Rock[ ] beer. You expect to get Rolling Rock, not Beck's or something else. Fine. There is no issue there.

The court instructed the jury that it could consider the concessions of Salem's counsel as concessions by Salem itself. The factfinder was plainly entitled to infer from the evidence of what had occurred, as well as from Salem's concession that "there [wa]s no issue" as to whether there was " 'fraud to the public,' " that there was actual consumer confusion.

In all the circumstances, we conclude that the district court did not err in ruling that Getty had proven actual confusion and established its state-law claim of unfair competition.

### C. Availability of Punitive Damages for Unfair Competition

■ Finally, we see no merit in Salem's contention that punitive damages are not available under New York law for a claim of unfair competition. Such damages are available under New York law where a "defendant's conduct has constituted 'gross, wanton, or willful fraud or other morally culpable conduct' to an extreme degree." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 371 (2d Cir. 1988) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982, 983, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976)). In the context of a claim for unfair competition, we have noted that "New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, ... whether or not directed against the public generally ...." *Roy Export Co. v. CBS, Inc.*, 672 F.2d 1095, 1106 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

In the present case, the jury found that Salem's contributory infringement was "done knowingly, intentionally and with a callous disregard for the rights of Getty in its trademark." Thus, the requisite degree of moral culpability was found.

We note that some New York cases have stated that in certain circumstances there must be fraud aimed at the public before punitive damages may be awarded. *See, e.g., James v. Powell*, 19 N.Y.2d 249, 260, 279 N.Y.S.2d 10, 18, 225 N.E.2d 741, 747 (1967); *Walker v. Sheldon*, 10 N.Y.2d 401, 405–06, 223 N.Y.S.2d 488, 491–92, 179 N.E. 2d 497, 488–99 (1961). *But see Borkowski v. Borkowski*, 39 N.Y.2d at 983, 387 N.Y.S. 2d at 233, 355 N.E.2d at 287 (fraud on public not always essential, so long as conduct at issue was sufficiently "gross, wanton, or willful ... or ... morally culpable"). If there is a fraud-on-the-public requirement, it was surely satisfied in the present case. The court on remand explicitly so found, noting that "[t]he deception practiced in selling non-Getty gasoline as Getty gasoline was indeed aimed at the ultimate consumer—the motoring public." That finding obviously is not clearly erroneous.

### CONCLUSION

We have considered all of Salem's arguments on this appeal and have found them to be without merit. The amended judgment is affirmed.