Filed 2/9/15  Weinstock v. Rosenberg CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DENISE WEINSTOCK, as Trustee, etc.,<br><br>    Plaintiff and Respondent.<br><br>    v.<br><br>JOEL ROSENBERG et al.,<br><br>    Defendants,<br><br>ROBERT S. FINK,<br><br>    Objector and Appellant. | B251512<br><br>(Los Angeles County<br> Super. Ct. No. BP108632) |

APPEAL from an order of the Superior Court of Los Angeles County. David J. Cowan, Judge.  Affirmed.

Robert S. Fink, in pro. per., for Appellant.

No appearance for Respondent.

_____

Attorney Robert Fink appeals from a trial court order assessing sanctions against him in connection with his clients' unsuccessful opposition to a motion for a protective order. The trial court concluded the discovery at issue was "totally meritless," granted the respondent's protective order and motion to quash, and assessed sanctions against Fink. We affirm the trial court sanctions order.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in the matter of the Jack Rosenberg and S. Shirley Rosenberg Revocable Trust, which was created pursuant to court order in 2007 (the Trust).[1] Denise Weinstock is the trustee; Joel and Jere Rosenberg are beneficiaries of the Trust and are represented by attorney Fink. In June 2010, Weinstock filed a "First Account Current" for the period of 2007 through 2009. The court approved the accounting. S. Shirley Rosenberg died in December 2011. In January 2012, Weinstock filed a "Second Account Current" for the period of 2010 through the end of October 2011. The court approved this second accounting. There were no objections to either the first or second accounting.

In August 2012, Weinstock filed a "Third Account." Joel and Jere Rosenberg filed objections. The objections are not included in the record on appeal. According to Weinstock's motion for a protective order, while the objections did not "[seek] an order overturning the prior final orders on the First and Second Accounts, during the course of procedural wrangling it has become apparent that the Objectors intended to assert claims beyond their Objections to the Third Account, specifically, they have now alleged that they are seeking to 'void[] any "Order" approving the [prior] accounting[s].' "

---

[1] The record in this appeal is fairly abbreviated. The appellant's brief cites the factual background portion of Weinstock's motion for a protective order for much of the information included in the brief's statement of facts. As appellant apparently concedes the accuracy of the motion's factual recitation, we take some of the background recited here from the same source.

The Rosenbergs previously appealed from an order confirming the sale of real property belonging to the Trust. In June 2014, we affirmed the trial court order. (*Rosenberg v. Weinstock* (June 4, 2014, B248388 [nonpub. opn.].)

2

On appeal, Fink describes the objections as concerning "inter alia, Weinstock's mishandling of trust funds surrounding several improper loans made from an irrevocable Bypass sub-trust to a Survivors sub-trust."[2]

In June 2013, the Rosenbergs issued a notice of deposition to Henry Weinstock, Weinstock's husband.[3] Accompanying the notice was a deposition subpoena demanding that Henry produce: 1) his current driver's license or I.D. card; 2) "any and all documents relating to the true name of your wife Denise Sue Weinstock, aka Sue Denise Weinstock, aka Sue Denise Penrod aka Sue Davis"; 3) "any and all documentation relating to your marriage to" Weinstock, "including but not limited to the marriage license issued prior to or after the marriage ceremony between you and your wife . . . and any application(s) made prior to issuance of said license"; 4) "any and all documentation relating to a legal proceeding formally changing your wife's name at any time"; 5) "any and all" financial statements the Weinstocks had given to "any financial institutions" in the preceding 10 years; and 6) "any and all" federal and state income tax returns Henry filed with Weinstock for the last 10 years.

The Rosenbergs also noticed the depositions of Weinstock and two of her attorneys. In addition to demanding production of documents related to the Trust and statements made in the third account, the Rosenbergs further demanded that Weinstock produce copies of her passport, social security card, driver's license; all documentation relating to any "legal process" Weinstock had used to "legally utilize the name Denise

---

[2] Fink's source of this summary is not the objections, but instead a letter from Fink to Weinstock's counsel regarding whether the parties would mediate or arbitrate the dispute. The motion for a protective order summarized the objections: "a) Object to this Account Current, due to the fact that Trustee was ordered by the Court to effectuate a final distribution at this juncture . . . ;  b) Object to approval of Trustees [*sic*] acts; c) Object to Approval of Account and Trustees [*sic*] Report in its entirety; d) Object to Trustee fees in their entirety . . . ; e) Object to Attorney fees in their entirety; f) Object to the reduction of Trustee's Bond . . . ; g) Seek surcharge/disgorgement … h) Petition the Court for an order for distribution . . . ."

[3] To avoid confusion, we sometimes refer to Henry Weinstock by his first name. No disrespect is intended.

Sue Weinstock personally OR professionally"; and documents evidencing her solvency during her tenure as trustee of the Trust.

In June 2013, Weinstock's counsel demanded the Rosenbergs withdraw the deposition subpoena to Henry. Counsel also requested an agreement that any upcoming depositions be limited to the time period covered by the third account only, and topics related to the third account and the Rosenbergs' objections. Fink refused to agree to limit the scope of the depositions. In response to Weinstock's counsel's demand that Fink explain how Henry's deposition and the documents sought were relevant to the case, Fink wrote: "I am under no obligation to disclose my work product, thoughts, or legal strategy behind my decision to depose Henry Samuel Weinstock. Suffice it to say, that under the authority of *Mota v. Superior Court* . . . a beneficiary, having filed formal objections to a trustee's petition, may conduct discovery relevant to those objections. It is inconsequential and irrelevant that you and your mentor 'feel' this is irrelevant. Te [*sic*] proper time to test that contention is at the actual deposition. Furthermore, to the trained legal mind, the nature of the documents that Henry is ordered to produce at the deposition, adequately discloses the nature of the relevancy fo [*sic*] same."

Later that month, Weinstock filed a motion seeking a protective order to prevent the taking of Henry's deposition, and to limit the scope of the depositions of Weinstock and her counsel. Weinstock also moved to quash the deposition subpoena seeking documents from Henry. Weinstock sought sanctions against Fink in the amount of $10,458. Weinstock argued Henry had a right not to be called as a witness due to the marital privilege, and the deposition was not reasonably calculated to lead to the discovery of admissible evidence. The motion further argued disclosure of the documents sought would violate Weinstock's and Henry's right to privacy and the information sought was irrelevant. The motion asserted Weinstock's deposition should be limited because res judicata barred objections or claims related to the first and second accountings, and because inquiries into Weinstock's personal life were not relevant and would only serve to harass her. Weinstock also requested a protective order to prevent

4

the Rosenbergs from deposing Weinstock's attorneys on matters protected by the attorney-client and attorney work product privileges.

The Rosenbergs opposed the motion. They argued Weinstock had no standing to bring a motion seeking to prevent Henry's deposition or to object to the subpoena for documents.[4] They also contended Weinstock had already agreed to arbitrate issues related to the first and second accountings.

At the hearing on the motion, Fink argued Henry's deposition had to do with Weinstock's financial solvency. He indicated that he had agreed to postpone Henry's deposition, but Weinstock's counsel informed the court that Fink had only agreed to postpone the deposition until after Weinstock's deposition and he might still pursue Henry's deposition depending on Weinstock's answers.

Fink asserted he and his clients believed the liability in the case exceeded Weinstock's $600,000 bond. The court suggested that even if the Rosenbergs could eventually pursue Weinstock's personal assets in satisfaction of a judgment if the bond was insufficient, at the moment it was "all totally premature," because there was no judgment and no finding of liability. Fink asserted his clients had information "based upon our background check that Ms. Weinstock has –owns property than is in her the name that she uses." When asked why this mattered, Fink answered only that his client's position was that the bond was not enough. As to the discovery related to the first and second accountings, Fink argued the Rosenbergs had a legal basis to "look into" the first and second accountings.

After hearing further argument, the court indicated the discovery was "totally meritless" and awarded sanctions "related solely to the motion" in the amount of $5,688. Fink protested that Weinstock's motion was not supported by an appropriate declaration.

---

[4] The opposition detailed Henry's legal experience and background as reported on his law firm's website and argued: "If Mr. Weinstock, a non-party independent witness, had any objections to the taking of his deposition or to any production of documents, it was incumbent upon him or an attorney representing him, to personally serve objections to the deposition notice . . . or file this Motion before the date scheduled for the taking of the deposition . . . ."

The court rejected the argument and concluded the discovery sought was not relevant and, "if not harassing," it was "at least premature." This appeal followed.

## DISCUSSION

Although the opening brief in this appeal purports to be on behalf of the Rosenbergs and Fink, the sanctions order was assessed against Fink alone, and only Fink has the right to appeal from that order. (*People v. Indiana Lumbermens Mutual Ins. Co.* (2014) 226 Cal.App.4th 1, 10-11.) To the extent the appeal was intended to be on behalf of the Rosenbergs, we reject it.[5] We also do not review the probate court's order granting the protective order on its own merits. The only issue before us is the sanctions order, and we consider the merits of the discovery dispute only to the extent necessary to resolve the appeal of the sanctions ruling.

I. **The Trial Court Did Not Abuse its Discretion in Imposing Sanctions Against Fink**

Under Code of Civil Procedure section 2025.420, subdivision (h), the court is to impose a monetary sanction "against any party, person, or attorney who unsuccessfully makes or opposes a motion for a protective order, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." " 'Substantial justification' " has been held to mean "a justification that is 'well-grounded in both law and fact.' " (*Diepenbrock v. Brown* (2012) 208 Cal.App.4th 743, 747 (*Diepenbrock*), citing *Doe v. U.S. Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) We review the trial court's sanctions order for an abuse of discretion. (*Ibid.*)

---

[5]     Indeed, in September 2013, the Rosenbergs filed a notice of appeal from the order granting Weinstock's motion for a protective order and the sanctions order. They also petitioned for a writ of supersedeas. We denied the petition, indicating there was no valid appeal pending as the appeal was from a nonappealable discovery order, and because the Rosenbergs had no standing to appeal the sanctions order. (*Rosenberg v. Weinstock*, B251166.) The Rosenbergs abandoned their appeal of the discovery order. Fink separately filed the instant appeal challenging the sanctions order.

6

Fink contends the trial court erred because he had a "reasonable basis in law and fact for seeking the requested discovery," even if the court ultimately determined his clients were not entitled to the discovery. We can find no abuse of discretion in the trial court's determination that Fink acted without substantial justification in seeking to depose Henry, demanding financial documents from him, demanding personal financial documents from Weinstock, and in insisting that discovery related to the first and second accounts was permissible. As to the deposition of Henry and the demands for production of the Weinstocks' personal financial documents, Fink and his clients failed to establish any factual or legal basis to seek such information. Indeed, in the written opposition to the motion for a protective order, the Rosenbergs' only argument regarding the discovery related to Henry was that Weinstock had no standing to object on Henry's behalf.[6] The written opposition did not even attempt to explain why the deposition of Henry was relevant, or how the documents requested from him in the deposition subpoena were within the permissible scope of discovery.

The rationale Fink provided at the hearing on the protective order and motion to quash for seeking Henry's deposition and the Weinstocks' personal financial documents was that Weinstock's personal assets might eventually be reachable if the Rosenbergs established her liability in excess of the bond. This was, at best, of minimal relevance to the litigation. The asserted purpose of the discovery was certainly outweighed by the Weinstocks' privacy interests. " 'When the interest of a private litigant in discovering relevant facts conflicts with the right of others to maintain reasonable privacy regarding their financial affairs, a court must "indulge in a careful balancing" before ordering disclosure. [Citation.] It follows that a court must not generously order disclosure of the

---

[6] As Weinstock pointed out in her reply filed in the trial court, Code of Civil Procedure section 2025.420, subdivision (a), allows any party or "any other affected natural person" to move for a protective order before, during, or after a deposition. Subdivision (b) further provides that the court "for good cause shown, may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense."

private financial affairs of nonparties without a careful scrutiny of the real needs of the litigant who seeks discovery. . . .' [Citation.]" (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 713.) Further, even a party has privacy rights in financial information, and courts accordingly balance the competing interests before allowing such discovery. (*Cobb v. Superior Court* (1979) 99 Cal.App.3d 543, 549-552.) The trial court here could appropriately consider the timing of the discovery, "in order to forestall the possibility of use for an ulterior purpose. . . . It would seldom seem necessary to the integrity of discovery proceedings that extensive discovery be permitted over objection into financial affairs of a defendant ahead of discovery on the merits of the underlying cause of action." (*Id.* at p. 550.)

Here, the Rosenbergs' demands were highly intrusive and so minimally relevant, if at all, that the trial court could reasonably conclude Fink had no substantial justification to demand such discovery. To the extent any of the information sought was relevant, it related only to Weinstock's ability to satisfy a hypothetical future judgment in excess of the bond. As such, the challenged discovery was, at least, exceedingly premature. There was no dispute that Weinstock's actions as trustee were taken in her professional capacity, and that there was a valid, significant bond. There was no evidence that Weinstock might be liable to the Rosenbergs for an amount exceeding the $600,000 bond.[7] Although Fink maintains on appeal there is "reason to believe Weinstock is

---

[7] At the hearing, Fink asserted a letter from the Rosenbergs' "settlement officer" offered a contrary assertion. However, in that letter, the attorney challenged the allocation of funds between a Bypass Trust and a Survivor's Trust. The conclusion reached in the letter was that the Survivor's Trust owed the Bypass Trust $562,859.61 in principal and interest. The letter alleged the Survivor's Trust could not satisfy this amount, thus the Rosenbergs "as exclusive beneficiaries of the Bypass Trust, should be left with the [residence maintained in the Survivor's Trust] without distributing any portion to any other beneficiaries of the Survivor's Trust since the Survivor's Trust is effectively insolvent." The primary issue appeared to be the disposition of a residential property. As to Weinstock's liability, the letter alleged only that the Rosenbergs had understood Weinstock as making decisions "to operate in a manner most efficient, rather than what may have technically been required to have been completed or distributed to satisfy the formalities of the trust document," and, if that was not the case, "the Trustee

8

insolvent," he provides no supporting citations to the record, and offered no such evidence in the lower court. He failed and continues to fail to explain how or why Weinstock's purported use of different last names in her personal and professional capacities indicates insolvency. Moreover, the breadth of the documents requested, and Fink's pursuit of the information from Henry Weinstock, an unrelated third-party, suggested an improper use of the discovery process.

Fink's refusal to limit discovery to issues related to the third account was similarly unjustified. The law regarding the finality and res judicata effect of court-approved accountings was not unsettled. (See *Diepenbrock, supra,* 208 Cal.App.4th at p. 749 [reversing sanctions order where there was conflicting legal authority on an unsettled issue].) In *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, the court explained: "The res judicata effect given orders settling trustee accounts is established by statute. [Probate Code] Section 1120 gives the probate court authority to issue orders settling trustees' accounts and passing on acts of trustees. [Citations.] The conclusiveness of such orders is specified in section 1123, which provides: 'A decree rendered under the provisions of this chapter, when it becomes final, shall be conclusive upon all persons in interest, whether or not they are in being.' [Citation.] . . . . Our Supreme Court has characterized the " 'conclusive' " effect provided by section 1123 as 'res judicata.' [Citation.] . . . . An order settling a trustee's account, like an order settling the account of an executor or administrator, is conclusive as to all matters passed upon but is not binding as to those matters not passed upon. [Citation.] In this respect there is no difference between a final account-that is, one made with a view to the immediate termination of the trust-and an intermediate account. [Citations.] Thus, orders approving intermediate accounts of a trustee are given res judicata effect to the extent issues have been passed upon. [Citation.]" (*Id.* at pp. 591-592, fn. omitted.)

---

could find itself faced with fiduciary complications." This letter, sent in an effort to settle the Rosenbergs' objections, was hardly substantial justification to require production of Weinstock's personal financial information, either directly from her or from her husband.

Although Weinstock discussed *Lazzarone* in the motion for a protective order, Fink's response was merely to assert that Weinstock had not provided any evidentiary support for the assertion that the Rosenbergs intended to assert claims beyond the objections to the third account, while simultaneously arguing that his clients had in fact asserted there were errors in the first and second accountings and Weinstock's counsel had agreed to arbitrate those claims. At the hearing, Fink also asserted *Estate of Van Deusen* (1947) 30 Cal.2d 285, provided support for the claim that the Rosenbergs could still challenge the first and second accountings.[8] Yet, *Estate of Van Deusen* does not address the res judicata effect of interim accountings of a trustee that are approved by the court and have become final.

In *Estate of Van Deusen*, after the probate court made an order of final distribution, it granted a new trial on the life beneficiaries' petition for directions to the trustee. The court then entered an order granting the petition and ordering the trustee to pay the life beneficiaries a monthly amount that required invading the corpus of the trust, contrary to the express provisions of the final decree of distribution. (*Estate of Van Deusen, supra,* 30 Cal.2d at pp. 287-288, 293.) The high court concluded the probate court's order granting the new trial was error because after the final decree of distribution, the court had no jurisdiction to modify the decree of distribution, or to modify the trust. (*Id.* at p. 290.) The court also concluded that even if the court had jurisdiction to grant a new trial on the petition, the order was erroneous because it provided "for an invasion of the corpus of the trust contrary to the express provisions of the decree of distribution without any attempt to protect the interests of the residuary beneficiaries in that corpus." (*Id.* at p. 293.)

---

[8]     Fink admitted he had not cited *Estate of Van Deusen* in his opposition to the motion for a protective order; when the court asked what the case stood for, Fink enlisted his paralegal to address the court with a summary of the case.

10

*Estate of Van Deusen* does not apply to this case.  It does not stand for the proposition that, after the court has approved interim accountings and such accountings have become final, a beneficiary may challenge the accountings, or, as happened in this case, pursue discovery related to objections to the now-final accountings when the only properly-raised issue was the third account and objections to that account.

In sum, when called upon to do so, Fink was unable to provide a legitimate, legally significant basis for the discovery he demanded on behalf of his clients.  The trial court could reasonably find that Fink's bare assertion that Weinstock "might be" insolvent, or that the bond might not be enough to satisfy a judgment if there were an eventual finding of liability, was not sufficient to justify the discovery demanded.  Indeed, the very nature of some of the demands—i.e., a copy of Henry Weinstock's driver's license; "any and all" documents related to Henry Weinstock's marriage to Weinstock, including any application for a marriage license; Weinstock's social security card; a demand to depose Weinstock's attorneys—suggested a misuse of the discovery process.  (Code Civ. Proc., § 2023.010, subds. (a), (c), (h) [misuses of the discovery process includes persisting without substantial justification in an attempt to obtain information outside the scope of permissible discovery; employing discovery to an extent that causes unwarranted annoyance, embarrassment, or oppression; unsuccessfully opposing, without substantial justification, a motion to limit discovery].)  Further, Fink did not establish below or on appeal that there was any basis to conclude res judicata did not bar inquiry into the trustee's decisions covered by the court-approved, and final, first and second accountings.

" ' "Whenever one party's improper actions—even if not 'willful'—in seeking or resisting discovery necessitate the court's intervention in a dispute, the losing party presumptively should pay a sanction to the prevailing party." . . . .' [Citation.]" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878.) The trial court acted well within its discretion in concluding sanctions against Fink were warranted in this case.

## DISPOSITION

The order is affirmed. As there has been no appearance for respondent, no costs will be awarded on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.